486 P.2d 778

NAVAJO COUNTY, Arizona, Appellants,

v.

FOUR CORNERS PIPE LINE COMPANY, Appellee.

No. 10139.

Supreme Court of Arizona, In Banc.

April 16, 1971.

Gary K. Nelson, Atty. Gen., by James D. Winter, Asst. Atty. Gen., Phoenix, for appellants.

Ryley, Carlock & Ralston, by George Read Carlock, and William F. Wilder, Phoenix, for appellee.

Fennemore, Craig, vonAmmon & Udall, by John J. O'Connor III, Phoenix, Killian & Legg, Mesa, Favour & Quail, P. A., Pres-cott, William T. Elsing Gorodezky, Marron & Diamond, Phoenix, Bilby, Thompson, Shoenhair & Warnock, P. C., Tucson, Evans, Kitchel & Jenckes, Phoenix, Holesapple, Conner, Jones, McFall & Johnson, Normal S. Hull, Tucson, Snell & Wilmer, Hill & Savoy, Phoenix, for amici curiae.

## SUPPLEMENTAL OPINION

McFARLAND, Justice (retired).

In support of the Petition for Rehearing, the briefs submitted by the Company and Amici Curiae express the belief that our original opinion in this matter is ambiguous as it relates to the statutory provision for a trial de novo in the superior court.[1] In conjunction with this doubt is the expressed feeling that we have judicially added the requirement that the superior court must initially find that the valuation method used by the State Department of Valuation was fundamentally unfair, arbitrary, fraudulent, or equitably excessive, as a jurisdictional prerequisite to the superior court's power to enter its judgment as to the "true cash value" of the taxed property.

An analysis of our original opinion shows we have done neither.

At this point, it is appropriate to commend the authors of the many briefs for their research and presentation of the issues here involved. As a result of these excellent briefs, this Court has had the benefit of an exhaustive compilation of the law and valuable expressions of opinion based thereon. We accordingly feel it is incumbent upon us to expand upon our original opinion so there can be no misunderstanding as to our holding or the basis therefor.

The various terms such as "arbitrary, fraudulent, capricious, fundamentally unfair, equitably excessive" were employed in the opinion, in their context of cited cases, in order to give the background and the principles of law used by courts of other jurisdictions in passing upon tax evaluations assessed by the taxing authorities in

1. Section 42–147, A.R.S.

those states. None of those terms were imported into our statute. However, it was the underlying principle of law therein expressed that had relevancy to this case; namely, that the plaintiff has the burden of proving the grounds provided in our statute for setting aside a valuation.

In some states the courts hold there must be finding of fraudulent, capricious or arbitrary method of valuation, e. g., State Board of Tax Com'rs v. Chicago M., St. P. & Pac. R. Co., 121 Ind.App. 302, 96 N.E.2d 279, but the principle of requiring a finding of fact, before fixing a valuation by a court, is the same no matter what semantics are used in the statute. In Arizona, in order to overturn the valuation fixed by the taxing authority there must be a finding—substantiated by competent evidence—that such valuation was "excessive." The burden of proof is on the plaintiff.

Section 42–147, subsecs. B and C, A.R. S. sets forth this procedure:

"B. At the hearing both parties may present evidence of any matters that relate to the full cash value of the property in question as of the date of its assessment. The valuation as approved by the state board shall be presumed to be correct and lawful.

C. If the court finds that the valuation is excessive, the court shall find the full cash value of the property and render judgment for appellant and against the state or county, whichever be appropriate, in an amount equal to the overpayment of taxes made by appellant. Any judgment in favor of an appellant who has paid his taxes to the county treasurer shall be paid by the county treasurer of the county in which the property is located out of sums collected from property taxes during the next fiscal year, and such amount shall then be subtracted from the sums due to the state and other political subdivisions in proportion to the amount each received from the overpayment of taxes made by appellant. The state and any political subdivision affected by the judg-

ment shall include the proportional amount of the judgment for which each is liable in its budget for the next fiscal year. Any increase in the budget because of the portion of the judgment being included therein shall not be subject to any budget limitation as may be provided by law. Any judgment in favor of an appellant who has paid his taxes to the commisson shall be paid from the general fund of the state and the legislature, at its next regular session, shall appropriate the funds necessary to pay any such judgment. *If the court* finds the valuation as approved by the state board represents the full cash value of the property, the action shall be dismissed with costs against appellant. *If* the court finds the valuation as approved by the state board is below the full cash value of the property, the judgment shall be for the state or county, whichever be appropriate, and against appellant for the costs of the appeal and the taxes due on the property as if the property had been placed on the roll at its full cash value" (Emphasis added.)

It is our opinion that our statute makes it indelibly clear that only (1) "if the court finds that the valuation is excessive"; then (2) "the court shall find the full cash value of the property" and (3) "render judgment * * * against the state or county * * *." We so held in State Tax Commission v. Phelps Dodge Corp., 62 Ariz. 320, 157 P.2d 693:

"If the Court finds that the valuation is excessive, the Court shall find the full cash value of the property." See also State Tax Commission v. Eagle Picher Min. & Smelting Co., 73 Ariz. 372, 241 P.2d 804.

It is equally clear that this procedure may be done in a single trial de novo and that the evidence governing the court's determination as to "excessiveness," if so found, may also be part or all of the evidence in determining the "full cash value"; and nothing in the prior opinion of this

Court should, or could, be construed as changing such procedure. In our prior opinion we said "Phelps Dodge stated only that the court has the authority to independently find the full evaluation of the property *if* it determines that the assessment placed upon it by the proper quasi-judicial board is *excessive*. That is also the wording of the statute." We further said that "Because of the Arizona statute, as interpreted in the Phelps Dodge case, our trial courts do have more jurisdiction than the courts in those cases referred to above" because "As we stated the Phelps Dodge case indicates that the trial court can make its own evaluation where it finds that the assessment made by the Department is excessive." Subsection B of § 42–147 provides for the conduct of the trial de novo.

■ The real test in the instant case is whether there was competent evidence sufficient for the superior court to find that the valuation, as fixed by the Department was "excessive." It is for this Court to determine, on appeal, whether the trial court's decision was based on competent evidence sufficient to substantiate the finding, and, if so, then the superior court was proper in fixing it own valuation. We are in effect repeating the words of the statute, and our prior opinion, but we want to make it plain that this was the holding of this Court.

We are also repeating the procedure followed in previous cases of this Court such as State Tax Commission of Arizona v. Magma Copper Co., 41 Ariz. 97, 15 P.2d 961; and State Tax Commission v. Phelps Dodge Corp., supra, where it was stated:

> "The burden was upon the plaintiff company to establish affirmatively its contention that the assessment was excessive."

Which leaves only the question whether competent evidence presented by the Company was sufficient to support a finding—arguendo, that it was made—that the valuation was excessive. It is the State's contention that the "wasting asset" concept is not an accepted standard method of appraisal for pipeline systems, and that the evidence introduced in support of it is speculative.

We pointed out in our opinion that a great deal of the testimony in favor of the Company's position dealt with the prospective future decline in its Los Angeles market because of possible increases in foreign imports; future production of the Santa Barbara off-shore oil wells; the new oil finds in Alaska, and the possibility of a pipeline across Alaska; and other testimony regarding possible factors projected some twelve years into the future. In Morris v. Woolery, 103 Ariz. 392, 442 P.2d 839, we rejected the Department's method of appraisal:

> "(2) Intervenors have moved to quash, asserting first that the Director of the Department of Property Valuation did consider other factors, such as, probable future price structures, changing labor conditions and competing substitute products, but believed that 'a moving arithmetic mean average of the previous ten year average price of copper per pound best predicted the future selling price * * *.' The moving arithmetic average in a rapidly inflating economy over a ten-year period is manifestly arbitrary as being projected too far in the past to properly reflect valuations based upon current and probable future prices. The consideration of other factors without weighing them into a proper moving arithmetic mean average does not save the assessment from arbitrariness."

The same principle applies here to evidence which speculates as to future prices, expenses, and market conditions twelve years in the future. Therefore, as we held in our opinion, the competent evidence was not sufficient to "support a finding" that the Department's evaluation was "excessive." The Company, in the instant case, attempted to establish a different method for proving value than that used by the State. The State rested its case on the contention that the Company failed to

prove excessive value by this different method, contending that it was not supported by competent evidence—that it was speculative. Therefore, the basic question involved in the instant case is whether plaintiff proved the valuation to be excessive by *competent evidence*. As we previously stated, it did not. This was the issue upon which the case was tried. Questions such as arbitrariness as stated in the Woolery case, *supra*, were not presented.

The plaintiff's evidence of a different method of evaluation than that used by the State, fell short of proof by competent evidence that the value placed on the property by the Department was inequitable or excessive. Therefore the value placed upon the property must stand as "correct and lawful." § 42–147, A.R.S.

The State, in its memorandum in opposition to appellee's motion for rehearing, points out the dangers inherent in statutes of those states having a broad scope of judicial review:

> "* * * to decide a very high portion of the litigated cases in favor of the taxpayer. * * * Under a broad rule of judicial review, the goal of equalization would be doomed by the differences in opinions as to value of over 50 Superior Court judges. Under a narrow scope of judicial review, equalization is feasible because most of the valuation questions will be decided by a single body, the State Board of Property Tax Appeals, and the Superior Court's scope of review of those decisions would be limited."

While this interpretation might be desirable in that it might prevent different methods being adopted by different courts throughout the State in evaluation of the same kind of property, that is not the procedure set forth by the state under the statute. It was for this reason that we discussed in detail the problems that have arisen in the courts in the field of property taxation. The legislature may in its wisdom wish to follow the recommendations of the State and narrow the scope of review, but that is a question for its deter-

mination and not for this Court. Our discussions of interpretations of other courts on tax problems contributed to the length of our original opinion, but we felt the questions involved were of sufficient moment to discuss these problems in detail.

Motion for rehearing denied.

HAYS, V. C. J., and UDALL and LOCKWOOD, JJ., concur.

NOTE: Justice STRUCKMEYER did not participate in the determination of this matter.