650 P.2d 1237

Domingo PESQUEIRA, an unmarried man; Walter Pesqueira and Amanda Pesqueira, husband and wife; and Heriberto Pesqueira and Lourdes Pesqueira, husband and wife, Plaintiffs/Appellees,

v.

PIMA COUNTY ASSESSOR; Pima County Treasurer; Pima County Board of Supervisors and Arizona State Board of Tax Appeals, Division I of the Department of Revenue, Defendants/Appellants.

No. 2 CA–CIV 4244.

Court of Appeals of Arizona, Division 2.

June 16, 1982.

Rehearing Denied Sept. 14, 1982.

William J. Redondo, Tucson, for plaintiffs/appellees.

Stephen D. Neely, Pima County Atty. by Peter E. Pearman, Deputy County Atty., Tucson, for Pima County defendants/appellants.

Robert K. Corbin, Atty. Gen. by Barbara E. Fisher, Asst. Atty. Gen., Tucson, for State of Ariz. defendants/appellants.

## OPINION

HOWARD, Chief Judge.

This is an appeal by the State of Arizona and Pima County from a superior court review of a property tax assessment.

The issues are: (1) Whether this court has jurisdiction to hear a tax appeal; (2) whether amendment of the pleadings to add the department of revenue as a defendant was proper under Rule 15(c) and (3) whether the property was improperly classified and excessively valued.

Plaintiffs-appellees, the Pesqueiras, have a large-scale ranching operation in Mexico. They export cattle to the United States at Sasabe, Arizona. Before 1977, they paid $1 per head of cattle to use the corrals and other facilities there. In 1977, they bought approximately 470 acres of land that includes these facilities. Although the Pesqueiras consider this land to be a part of their total ranching operation, it is not contiguous to any of their Mexican ranches. The Arizona acreage includes the town of Sasabe, which occupies only a fraction of the total area and which consists of a bar, grocery store, automobile parts store and several residences. The gross income from the rentals in town is from $30,000 to $40,000. In fact, the Pesqueiras consider the town to be incidental to their intended use of the property, which is the shipping of cattle into the United States. They process 1,500 to 2,000 head of cattle through the Sasabe property each year. The facilities are also available to other Mexican ranchers, who pay $1.50 per head. About three percent of the cattle are not accepted by their buyers and are set free from the corrals to forage. In addition, seed bulls destined for Mexico are turned out to forage, each for a month or more.

The Pesqueiras bought the property for $620,000. It had been classified "agricultural/grazing", but in 1979, the assessor revoked the grazing classification and placed a full cash value of $545,380 on it. The property is split into two parcels for assessment purposes. One parcel contains both the town and the corrals. The Pes-

queiras appealed to the county board of equalization and secured a reduction in the full cash value to $435,276. The classification was not changed. This was upheld by the state board of tax appeals. The Pesqueiras appealed to the superior court. That court ordered the reclassification of the land to agricultural/grazing and further reduced the full cash value to $134,922. The state and county appealed to this court.

I

■ The Pesqueiras raise a threshold jurisdictional issue, arguing that a tax appeal cannot be pursued beyond the superior court and citing *Sarwark v. Thorneycroft*, 123 Ariz. 1, 596 P.2d 1173 (App.1979), aff'd 123 Ariz. 23, 597 P.2d 9. In *Sarwark*, the court held that appellate jurisdiction is not created by the administrative review act where a statute prescribes procedures for review in the superior court but is silent as to review by a higher court. Appellate review in the instant case, however, proceeds under the tax appeal statutes themselves. A.R.S. § 42–152(G) directs the county board of supervisors or department of revenue to correct the tax rolls after the superior court has entered judgment "unless appeal is taken as provided under the rules of civil procedure." The statute is not silent on the issue of appellate court jurisdiction and *Sarwark* therefore has no application.

■ Appellants raise their own jurisdictional argument, asserting a lack of subject matter jurisdiction in the superior court. A.R.S. § 42–146 places a time limit on taxpayer appeals to the superior court; in the instant case, it is November 1 of the tax year. In addition, § 42–146 requires the appeal to be prosecuted as provided in A.R.S. § 42–151, the pertinent parts of which state:

"C. The clerk of the superior court shall docket the appeal in the name of the appellant [taxpayer] as plaintiff and of the state or county ... and the department [of revenue] as defendants ....

D. A copy of the notice of appeal shall be served on the defendant or defendants

and the state board of tax appeals within ten days of filing, in the manner provided for service of process in the rules of civil procedure or by certified or registered mail. An affidavit showing such service shall be filed with the clerk of the court . . . ."

In their complaint to the superior court, the Pesqueiras named as defendants the Pima County Assessor, Pima County Treasurer and The Pima County Board of Supervisors and the Arizona State Board of Tax Appeals (Division I of the Department of Revenue). Affidavits of service of process show service on the board of tax appeals by service on the assistant attorney general in Tucson. The Pesqueiras realized their mistake and moved to amend the caption, which was granted beyond the November 1 filing deadline.

Appellants argue, and we agree, that the procedures in the statute must be followed in order to confer subject matter jurisdiction on the court. Cf. *Dassinger v. Oden,* 124 Ariz. 551, 606 P.2d 41 (App.1979) (fulfilling statutory requirements for claims against the state is jurisdictional); *Norcor of America v. Southern Arizona International Livestock Association,* 122 Ariz. 542, 596 P.2d 377 (App.1979) (same). Thus, the taxpayer must name and serve the proper defendants. (The statute does not merely give docketing directions to the clerk, as the Pesqueiras suggest.) The filing deadline also is a jurisdictional condition. See *Cochise County v. Wilcox,* 14 Ariz. 234, 127 P. 758 (1912). Also, see *Bomer v. Ribicoff,* 304 F.2d 427 (6th Cir. 1962).

We believe, though, that the superior court had jurisdiction by virtue of the amendment of the pleadings, which was properly allowed under Rule 15(c), Arizona Rules of Civil Procedure, 16 A.R.S. This rule permits a change of parties after a limitation period has passed if the new party had notice of the action and if it knew or should have known it would have been named but for a mistake. The department of revenue argues that these requirements have not been met. It points out that notice served on the tax appeals board cannot

give notice to the department because there is a statutory "Chinese wall" between them. See A.R.S. § 42–141(A) ("There is established a state board of tax appeals as an independent agency which shall not in any way be subject to the supervision or control of the department of revenue.") The department claims it cannot be brought into the case after November 1 by the "relation back" doctrine of Rule 15(c) and the case must be dismissed for failure to join the department.

Rule 15(c) includes the following language which was added in a 1966 amendment:

"Service of process in compliance with Rules 4(d)(7) or (8) satisfies the requirement of [the new party's knowledge of the action and the mistake in not naming it] with respect to the state, county, municipal corporation or any agency or officer thereof to be brought into the action as a defendant."

Rule 4(d) states:

"Service shall be made as follows: (7) Upon the state, by delivering a copy of the summons and of the complaint to the attorney general. (8) Upon a county or municipal corporation or other governmental subdivision of the state subject to suit, by delivering a copy of the summons and of the complaint to the chief executive officer, the secretary, clerk, or recording officer thereof."

The purpose of this amendment was to allow for relation back where a party has named the wrong person in an agency. State Bar Committee Note, Rule 15(c), Arizona Rules of Civil Procedure, 16 A.R.S. The amendment follows a similar one in the federal rules and was adopted mainly for conformity with the federal rules. Id. In 3 Moore's Federal Practice ¶ 15.01[9], the reason for the amendment is explained. The author gives examples of complaints filed in district courts pursuant to the social security statutes. The claimants, who should have named the Secretary of Health, Education and Welfare, mistakenly named "the United States of America", the department or a non-existent agency. All were denied

the opportunity to amend after the statutory period of limitations and suffered dismissal for failure to follow the statutory procedures. Moore's states:

"The policy of the statute limiting the time for suit against the Secretary of HEW would not have been offended by allowing relation back in the situations described above. For the government was put on notice of the claim within the stated period . . . by means of the initial delivery of process to a responsible government official . . . . In these circumstances, characterization of the amendment as a new proceeding is not responsive to the reality, but is merely question-begging; and to deny relation back is to defeat unjustly the claimant's opportunity to prove his case." Id. at 15–10

## II

■ Thus we proceed to the merits of this case. Was the property improperly classified and was the valuation excessive? The valuation and assessment approved by the board of equalization is presumptively correct, A.R.S. § 42–152, and the burden of proof is on the taxpayer to show that the board's action was excessive. *Navajo County v. Four Corners Pipe Line Company,* 106 Ariz. 511, 479 P.2d 174 (1970); see A.R.S. § 42–152(C). The superior court may take evidence, A.R.S. § 42–152(B), but its function is to review the board's action only on an abuse of discretion basis. *Navajo County v. Four Corners Pipe Line Company, supra.*

■ In its guidelines for property valuation, the department of revenue has defined "agricultural property" as:

"[T]hat property used for the purpose of agronomy, horticulture or animal husbandry:

1. In which the primary function is to produce an agricultural crop or commodity.

2. In which the primary investment is for the purpose of farming or stock ranching.

3. Capable of being utilized, solely from its agricultural ability, to sustain economic self-sufficiency and return a normal profit on the investment in comparison to the agricultural market . . . . "

Further guidelines include the following:

"The primary use of the land shall be for the purpose of livestock grazing of large uncultivated acreages in order to utilize the natural forage crops thereon.

\*　　\*　　\*　　\*　　\*　　\*

A nonqualifying ranch is property used primarily for residential, pleasure, commercial, or recreational purposes and in which agricultural use is incidental. . . . "

These guidelines are binding on the court. See *Department of Property Valuation v. Cookey,* 23 Ariz.App. 470, 534 P.2d 278 (1975).

■ In the instant case, the Pesqueiras' land contains the town of Sasabe and corrals holding cattle to be fed and watered before delivery to buyers. In addition, the facilities are available to other cattlemen for a charge. These clearly are not agricultural uses as defined in the guidelines. Opposed to these uses is the grazing of about 40 head of cattle on the natural forage crops of the land. It does not appear, however, that the assessor was incorrect in viewing this grazing as incidental to the primary commercial use of this property. The Pesqueiras argue that the Sasabe property is an integral part of their overall ranching operations and should therefore be classified as agricultural. This does not follow. Furthermore, the Mexican ranches are not contiguous to the Arizona property. It is obvious that the subject parcel is a separate piece of land used primarily for commercial purposes, even though the cattle export operation ties in with the cattle-raising operation in Mexico.

■ The trial court made a finding of fact that the full cash value of the property was $115,359. In its conclusions of law, it placed a full cash value of $134,922. Appellants claim that the Pesqueiras did not present any substantial evidence to rebut the valuation by the taxing agencies, as

required by A.R.S. § 42–152. The Pesqueiras claim that a 1978 appraisal introduced by appellants shows a full cash value for the property of $143,281. This figure, however, is the 1977 tax assessor's valuation. On page one of this same exhibit the current market value of the property is estimated to be $633,000. "Full cash value" and "market value" are synonymous. A.R.S. § 42–201. The only other evidence of value is the 1978 assessor's valuation of $137,602. It is clear that the Pesqueiras have not presented any substantial evidence to rebut the presumption of correctness of the valuation placed on their property.

The judgment of the superior court is reversed and the decision of the state board of tax appeals is reinstated.

BIRDSALL, J., and J. RICHARD HANNAH, Superior Court Judge, concur.

NOTE: Judge JAMES D. HATHAWAY having recused himself in this matter, Judge J. RICHARD HANNAH was called to sit in his stead and participate in the determination of this decision.