767 P.2d 49

**BELLA VISTA RANCHES, INC., an Arizona corporation; Joseph U. Cracchiolo, an individual; Dan Cracchiolo, an individual; Andrea Cracchiolo, an individual; Cochise Enterprises, Inc., an Arizona corporation, Plaintiffs/Appellants,**

v.

**COCHISE COUNTY, a political subdivision of the State of Arizona; Arizona Department of Revenue, an agency of the State of Arizona, Defendants/Appellees.**

**No. 2 CA–CV 88–0109.**

Court of Appeals of Arizona, Division 2, Department B.

Dec. 13, 1988.

Donald P. Roelke, Phoenix, for plaintiffs/appellants.

Alan K. Polley, Cochise Co. Atty. by John A. MacKinnon and Chris M. Roll, Bisbee, for defendant/appellee Cochise County.

Robert K. Corbin, Atty. Gen. by James D. Winter, Phoenix, for defendant/appellee Arizona Dept. of Revenue.

## OPINION

FERNANDEZ, Judge.

The three questions presented in this tax appeal are whether certain parcels should be classified as grazing land, whether a parcel, a portion of which was condemned by the City of Sierra Vista for a public street, was properly valued and whether unsold residential subdivision lots were properly valued.

## FACTUAL BACKGROUND

The property at issue is owned by appellants Bella Vista Ranches, Inc., Joseph, Dan and Andrea Cracchiolo and Cochise Enterprises, Inc. (hereafter collectively referred to as Bella Vista). Historically, Bella Vista's property, together with most of what is now the City of Sierra Vista, was part of a large ranching operation. Bella Vista purchased a large portion of the ranch in the 1950's shortly before the city was founded. Much of the present city of Sierra Vista is the result of Bella Vista's development either by extensive land sales or by donations of significant portions of land to the city, schools, and other governmental entities. Approximately 95% of Bella Vista's land continues to be used for grazing cattle and is classified as grazing land. Bella Vista is one of the two major private land owners in the Sierra Vista area of Cochise County. It has developed apartment complexes and residential subdivisions, sold land to other developers, and engaged in various commercial enterprises. Its principal economic activity is its water company.

Under the Arizona ad valorem tax statutes, county assessors are required to determine the full cash value of all properties within their counties as of January 1 of each year. A.R.S. § 42–221. Bella Vista appealed the valuations given to certain parcels of its land in 1985 in an action filed in Cochise County Superior Court. The matter was tried to the court, and judg-

ment was entered in favor of appellees. We find no error and affirm.

## STANDARD OF REVIEW

The superior court trial was held de novo pursuant to A.R.S. § 42–178. That authority to conduct de novo review of the tax board decision is broad and, if the court concludes from competent evidence that the classification of the property is erroneous, it must determine the correct classification. A.R.S. § 42–178(C). In addition, if the court finds that the statutory presumption of correctness has been overcome and that the value assigned to the property is excessive, it may proceed to find a new cash value. A.R.S. § 42–178(C); *Inspiration Consolidated Copper Co. v. Arizona Department of Revenue*, 147 Ariz. 216, 709 P.2d 573 (App.1985). On appeal, the task of this court is to examine the record to determine if the decision below is based on " 'competent evidence sufficient to substantiate the finding....' " *Sherrill & La Follette v. County of Mohave*, 22 Ariz.App. 606, 608, 529 P.2d 1200, 1202 (1975), quoting *Navajo County v. Four Corners Pipe Line Co.*, 107 Ariz. 296, 299, 486 P.2d 778, 781 (1971). On appeal, the reviewing court does not weigh conflicting evidence in order to determine its preponderance on a fact issue. *Whittemore v. Amator*, 148 Ariz. 173, 713 P.2d 1231 (1986).

## PROPRIETY OF NON–AGRICULTURAL CLASSIFICATION

"Assessed valuation, against which the tax rate is applied to determine the amount of taxes owed, is a percentage of full cash value, and that percentage is determined by the property's classification." *Stewart Title & Trust v. Pima County*, 156 Ariz. 236, 237–38, 751 P.2d 552, 553–54 (App. 1987); see also A.R.S. § 42–227. The applicable percentage is not at issue here because both vacant non-agricultural land and agricultural land are designated as class four property, A.R.S. § 42–162, and are assessed at 16% of full cash value. A.R.S. § 42–227(B)(4).

Bella Vista's first issue arises from the county assessor's classification of several parcels of its property as non-agricultural. That classification determines the method used to calculate both the full cash value and the limited cash value, which ultimately determine the amount of taxes which must be paid. Unless otherwise required, the value of real property is calculated by standard appraisal methods, including market approach, cost approach and income approach. A.R.S. § 42–141(A)(5). However, the legislature requires a single method of valuation to be used for agricultural land. A.R.S. § 42–123(A)(5) (now § 42–141(A)(5)), as it read in 1985, provided in part as follows:

> For tax year 1981 and each year thereafter, land used for agricultural purposes shall be valued using solely the income approach to value without any allowance for urban or market influences.

It is undisputed that the property at issue was not valued by the income approach. For these particular parcels, there was no convincing evidence that any income was being generated. Rather, the county assessor concluded that the property was not used for agricultural purposes, and the parcels were valued utilizing the market approach.

Pursuant to the authority of A.R.S. § 42–141(A)(5), the Department of Revenue has developed guidelines for use by county assessors in determining whether land should be classified as agricultural or non-agricultural. The guidelines which were applied to the property at issue, designated as Agricultural Manual No. 1532, have previously been the subject of scrutiny by this court. *Stewart Title & Trust v. Pima County*, supra. The manual, which was introduced into evidence, states in relevant part:

## CRITERIA FOR AGRICULTURAL PROPERTY

*Definition of Agricultural Property*

Agricultural property is that real and personal property used for the purpose of agronomy, horticulture or animal husbandry:

1. In which the primary function is to produce an agricultural crop or commodity.

2. In which the improvements are primarily oriented to agricultural functions or agricultural support functions; i.e., farm residence, transient workers' quarters, farm equipment storage, farm produce storage, stock loading ramps and pens, etc.

3. In which the total operation consists of at least the minimum number of acres or animal units specified in pages 205 through 208 or which qualifies for farm designation in accordance with provisions for exemption from minimum acreage requirements. (See page 207).

4. Which is used with a reasonable expectation of profit solely from its agricultural use.

\*     \*     \*     \*     \*     \*

### Ranch Property

For property to be classified as ranch property, its primary use must be livestock grazing on large uncultivated acreages utilizing natural forage crops.... As with farm land, the ranching function is generally limited to typical operations normally undertaken or performed by the majority of ranchers.

The evidence in this case was that Bella Vista owned no livestock as of January 1, 1985. Bella Vista also produced no agricultural lease which was in effect as of that date. Joseph Cracchiolo testified that there was an average of 250 head of cattle on the ranch property during 1985, all owned by other people. The only income figures produced for the ranch were for 1983 and 1984.

The approximately 380 acres which are the subject of this portion of the appeal are identified by the assessor by seven parcel numbers. Most are not contiguous, either to each other or to Bella Vista's ranch property. Most of the property is located either within or adjacent to the city limits of Sierra Vista.

### Parcel 106–72–001A

This parcel consists of nearly 110 acres of vacant land located within the City of Sierra Vista. It has been classified as non-agricultural since 1974. This lot is bounded by high density developed residential subdivisions on the south and west, by the Highway 90 bypass and the federal land of Fort Huachuca on the north, and by the Sierra Vista City Hall on the east. An elementary school is adjacent to the property. Bella Vista's Ranchos Carmela residential subdivision lies to the northeast. The lot is not adjacent to or near property which is part of the ranching operation. There have been a few cattle on the land from time to time. A full cash value of $3,008 per acre was given to this parcel.

### Parcels 107–16–001, 107–16–009A and 107–16–010A

Parcel 107–16–001 is approximately 61 acres and is zoned for either commercial or industrial uses. The rezoning was initiated by Bella Vista. This parcel was originally classified as non-agricultural in about 1968. Since about 1977, approximately three acres of the lot have been used for a swap meet. The lot is bounded by a residential subdivision, some vacant land and a small amount of mixed commercial property to the south, and a Forest Service building to the north. The Highway 90 bypass runs along its west boundary, and Charleston Road is to the southeast. This land was given a $4,800 per acre valuation.

Parcel 107–16–009A consists of 74 acres and is zoned for industrial use. It is adjacent to the area on which the Industrial Development Authority warehouse is located. Part of this lot was sold to the city for industrial development, held for several years, and reconveyed to Bella Vista. Its primary use is for development. It was valued at $4,500 per acre.

Parcel 107–16–010A has been substantially developed by Bella Vista. It includes Bella Vista's 24,000 square foot commercial warehouse. The Bella Vista Water Company headquarters, storage building and a well site are located in the central portion of the lot. To the west is the Forest Ser-

vice Building, and to the east is the Sierra Vista campus of Cochise College. There was no evidence presented that this parcel was a contributing factor to the ranch operation.

### Parcels 107–19–019 and 107–20–017

These parcels of 12 acres each are portions of a strip of railroad right-of-way purchased by Bella Vista from the Southern Pacific Railroad in 1983. Bella Vista has never owned any of the property either to the north or south of these strips. There was conflicting testimony as to whether the parcels were fenced as of January 1, 1985, with the appraiser for the county assessor testifying they were not fenced. There is limited vegetation on them.

### Parcel 107–49–001

This lot consists of 44 acres. In 1984, the adjacent 110 acres were sold by Bella Vista. Part of that 110 acres was developed into a residential subdivision after January 1, 1985. This parcel is isolated from other portions of Bella Vista's ranch property and would not support one animal unit per year. Immediately to the north is Highway 90. A portion of the property to the north of the highway is leased by a block company, and on the west is a mobile home subdivision.

### Summary of Non–Agricultural Parcels

■ Even though there was evidence that Bella Vista occasionally had livestock on some of the parcels, the mere presence of livestock upon vacant land is not sufficient to establish that the land is used for agricultural purposes. See *Burns v. Herberger*, 17 Ariz.App. 462, 498 P.2d 536 (1972), overruled on other grounds, *Golder v. Department of Revenue*, 123 Ariz. 260, 599 P.2d 216 (1979). Most of the parcels in question are not adjacent to or near the Bella Vista Ranch operation. The parcels are small in relation to the remainder of the ranch, which is located in high desert land capable of supporting approximately 12–14 head of cattle per section per year. The enormous growth of the City of Sierra Vista in recent years has encroached upon most of these lands. Arizona courts have continually made it clear that the trial court must carefully review the specific facts relevant to the classification. *Inspiration Consolidated Copper Co.*, supra; *Sherrill & La Follette v. Pima County*, supra. Considering all the evidence presented and applying the Department of Revenue guidelines, we conclude there was insufficient evidence to classify these parcels as agricultural land.

## VALUE OF PARCEL PARTIALLY CONDEMNED FOR STREET PURPOSES

■ In March 1983, the City of Sierra Vista took possession of a 4.3–acre strip of land pursuant to eminent domain proceedings it had initiated in order to build a public street within a 35.6–acre parcel owned by Bella Vista. The city completed the street before January 1, 1985; however, the condemnation proceedings were not completed until 1987. Bella Vista claims that the assessor failed to consider the loss of the property taken by the city in valuing the property. The issue then is whether there was evidence to support the valuation given to this property by the assessor.

The property was valued at $712,600. The county appraiser testified that the 3.32–acre portion of commercially zoned property which fronts on Fry Boulevard (Sierra Vista's main business street) was valued at about $2.50 per square foot. He also testified that comparable sales data indicated that "the actual value of commercial frontage on Fry Boulevard at that time was about double that figure." Bella Vista's evidence was that the valuation was too high and that the addition of the street did not enhance the remaining property. Appellees' evidence was that the addition of the street frontage increased the overall value of the property.

The only issue on appeal is whether evidence existed to support the total valuation of the entire parcel of land. If the total valuation is supported, it is immaterial that one part is overvalued and another is un-

dervalued. *Transamerica Development Co. v. County of Maricopa*, 107 Ariz. 396, 489 P.2d 33 (1971). Here, we find substantial evidence to support the value assigned even though the portion taken for the street was still on the tax rolls as Bella Vista's property because the final order of condemnation had not yet been entered.

## VALUATION OF RANCHOS CARMELA ESTATES PARCELS

The parcels at issue are the remaining 42 lots of the second phase of Ranchos Carmela Estates, a 45–lot residential development located north of the Highway 90 bypass. Bella Vista contends that the values assigned were improper and were not based on the Arizona Department of Revenue Land Manual guidelines.

Bella Vista has sold all the lots in phase one of the development, and houses have been built on nearly all those lots. The undeveloped lots in phase two were valued by the assessor at $12,000 for the smaller lots and $15,000 for the larger lots. In computing the values, the assessor considered the following factors: the in-place street, water, power and other improvements, the listing and selling prices, and the values of lots in the adjacent unit and in other subdivisions in Sierra Vista. The selling prices of the lots were between $20,000 and $30,000.

Bella Vista contends that the wrong methodology was used in arriving at the values and that the assessor failed to follow the Arizona Department of Revenue Land Manual No. 1531, Chapter VI, "Residential Land—Subdivisions" in not applying its Appendix H, entitled "Subdivision Present Worth Factors." Bella Vista contends that use of Appendix H is mandatory, citing *Pesqueira v. Pima County Assessor*, 133 Ariz. 255, 650 P.2d 1237 (App. 1982). The guidelines at issue in that case, however, related to agricultural property, not subdivisions. The manual which is applicable to the issue here discusses appropriate factors for determining parcel valuation in subdivisions and provides that "Appendix H *may* be used as a guide to assist the assessor in determining the value of a subdivision that is relatively inactive" (emphasis added). Therefore, we do not find that use of Appendix H is mandatory.

A.R.S. § 42–227(A) requires the property to be valued at market value. Considering the above factors, we find evidence to support the assessed valuation assigned to the lots. When a taxpayer appeals to the superior court on the ground that the assessment of his property is excessive, he bears the burden of overcoming, by competent evidence, the statutory presumption that the valuation established is correct. Golder v. Department of Revenue, supra. We agree with the trial court that the burden was not met in this case.

AFFIRMED.

ROLL, P.J., and LIVERMORE, J., concur.