851 P.2d 159

**TITLE USA; W.P. Ritter Limited Partnership; Thomas Tait and Patricia Tait, husband and wife; Thomas Tait**

**v.**

**MARICOPA COUNTY; Arizona Department of Revenue of Arizona.**

**No. TX 91–00113.**

Tax Court of Arizona.

May 5, 1993.

Beus, Gilbert & Morrill by K. Layne Morrill, Phoenix, for plaintiffs.

Atty. Gen. by William D. Hostetler, Phoenix, for defendants.

## OPINION

MURPHY, Judge Pro Tem.

The issue in this case is whether Taxpayers' land should have been classified as "vacant land" or land "used for agricultural purposes" for tax years 1991 and 1992. Taxpayers' land is comprised of approximately 150 acres and is located within the city limits of Tempe. Sixty percent of the land is owned by the W.P. Ritter Limited Partnership. Forty percent is owned by Thomas and Patricia Tait. For purposes of this Opinion, the Court will refer to these owners as "Taxpayers."

Since October 1988, Taxpayers have "dry farmed" barley on their land, using rainfall as the sole source of irrigation. Taxpayers maintain that, accordingly, their property should have been classified as land "used for agricultural purposes" pursuant to A.R.S. § 42–167. The Taxing Authorities argue Taxpayers do not satisfy the requirements contained in A.R.S. § 42–167 for land "used for agricultural purposes;" the land was properly classified as "vacant land."[1] Trial to the Court concluded on November 24, 1992. The Court finds Taxpayers' land was properly classified as "vacant land."

Taxpayers seek to have their land classified as "used for agricultural purposes" for a simple reason; if the land is so classified, Taxpayers will save approximately $140,000.00 a year in property taxes. These tax savings are so significant because of the method used to value land "used for agri-

cultural purposes." The amount of property tax owed on a parcel of property is determined using the "full cash value" of the property. A.R.S. §§ 42–221, 42–227. "Full cash value" is determined by one of several methods, depending on how the land is classified. The "full cash value" of land classified as "vacant land" is its "market value." A.R.S. § 42–201(4). "Market value" is the price a willing buyer will pay to a willing seller. *State v. McDonald*, 88 Ariz. 1, 352 P.2d 343 (1960); *Title USA v. Maricopa County*, 168 Ariz. 10, 13, 810 P.2d 633, 636 (Tax 1991).

The "full cash value" of land "used for agricultural purposes," however, is determined not by "market value" but by an income method defined in A.R.S. § 42–141(A)(5). The difference between these two methods is crucial; in this case, the "income method" will produce a much lower "full cash value" figure than the "market value" method. This is so in part because Taxpayers' land is located near metropolitan areas in Maricopa County. The "market value" of the land is high because of its potential for ultimate urban development.

The question this Court must address is whether Taxpayers' property qualifies as land "used for agricultural purposes" pursuant to A.R.S. § 42–167. As applied to this case, that section requires:

A. Property is not eligible for classification as property used for agricultural purposes unless it meets the following criteria:

1. The primary use of the property is as agricultural land and the property has been in active production in conformance with generally accepted agricultural practices for at least seven of the ten prior years....

2. There is a reasonable expectation of operating profit, exclusive of land cost, from the agricultural use of the property.

It was determined by an earlier motion that the Taxing Authorities waived the re-

---

1. Both "vacant land" and land "used for agricultural purposes" are class four property, assessed at 16% of their full cash value.

quirement set forth in A.R.S. § 42–167(A)(1). The only issue this Court must address, then, is whether there is a "reasonable expectation of operating profit, exclusive of land cost, from the agricultural use of the property." A.R.S. § 42–167(A)(2).

When the language in a statute expresses a clear unequivocal standard, the court will interpret the statute accordingly. It will look for no further guidance. *Escalanti v. Superior Court*, 165 Ariz. 385, 388, 799 P.2d 5, 8 (App.1990); *Rio Rico Properties, Inc. v. Santa Cruz County*, 172 Ariz. 80, 85, 834 P.2d 166, 175 (Tax 1992).

A.R.S. § 42–167(A)(2) does not express a clear an unequivocal standard. The statute does not provide a definition of "reasonable expectation of profit" to make clear how the term should be applied. In such a case, the court must interpret the statute to discern the legislative will. *Title USA v. Maricopa County*, 168 Ariz. 10, 13, 810 P.2d 633, 636 (Tax 1991). In so doing, the court may examine the statute's context, the language used, the subject matter, the effects and consequences, the historical background, and the purpose and spirit of the law. *State v. Reynolds*, 170 Ariz. 233, 234, 823 P.2d 681, 682 (1992); *State v. Johnson*, 171 Ariz. 39, 41, 827 P.2d 1134, 1136 (App.1992).

A.R.S. § 42–167, which defines "used for agricultural purposes" and sets forth the "reasonable expectation of profit" requirement, was added in 1989. Prior to that time, A.R.S. § 42–162 allowed land to be classified as "used for agricultural purposes," but no statute defined the term. A number of Arizona cases had wrestled with such a definition, however. *Golder v. Dep't of Revenue*, 123 Ariz. 260, 599 P.2d 216 (1979); *Yavapai County v. Wilkinson*, 111 Ariz. 530, 534 P.2d 735 (1975); *Hibbs v. Chandler Ginning Co.*, 164 Ariz. 11, 790 P.2d 297 (App.1990); *Bella Vista Ranches, Inc. v. Cochise County*, 159 Ariz. 326, 767 P.2d 49 (App.1988); *Central Citrus Co. v. Arizona Dep't of Revenue*, 157 Ariz. 562, 760 P.2d 562 (App.1988); *Stewart Title & Trust v. Pima County*, 156 Ariz. 236, 751 P.2d 552 (App.1987); *Pesqueira v. Pima County Assessor*, 133 Ariz. 255, 650 P.2d 1237 (App.1982); *Dep't of Property Valuation v. Cookey*, 23 Ariz.App. 470, 534 P.2d 278 (App.1975); *Sherrill & La Follette v. County of Mohave*, 22 Ariz.App. 606, 529 P.2d 1200 (App.1975); *Burns v. Herberger*, 17 Ariz.App. 462, 498 P.2d 536 (App.1972); *Title USA v. Maricopa County*, 168 Ariz. 10, 810 P.2d 633 (Tax 1991).

The courts in most of these cases listed the "reasonable expectation of profit" requirement as a factor to be considered when determining whether land should be classified as agricultural. A detailed analysis of this factor was provided in *Title USA v. Maricopa County*, 168 Ariz. 10, 810 P.2d 633 (Tax 1991), the predecessor to this case. The issue in *Title USA* and this case—whether Taxpayers' land should have been classified as "used for agricultural purposes"—is the same. Only the tax years are different. *Title USA* addressed tax years 1988 and 1989, when no statute defined "used for agricultural purposes." This case addresses tax years 1991 and 1992, when A.R.S. § 42–167 defines the term.

The court in *Title USA* held that Taxpayers' land was not "used for agricultural purposes" and was correctly classified as "vacant land." In fashioning a test to determine whether Taxpayers' land was "used for agricultural purposes," the court considered the purpose of such a classification:

> [T]he legislature intended that property dedicated to a *bona fide* agricultural use was not to be subject to crippling taxes caused by rapid valuation increases engendered by speculation on future urban development. The Court is also convinced that the legislature did not intend to permit an agricultural use classification to speculators or developers who, seeking significant tax relief, use idle vacant land for something less than a *bona fide* agricultural activity.

*Title USA*, 168 Ariz. at 19, 810 P.2d at 642. Based on this rationale, the court adopted the "reasonable expectation of profit" requirement as part of its test to

determine whether property is "used for agricultural purposes." A "reasonable expectation of profit" exists, the court held, if (1) a reasonably prudent farmer would use the land as a farm if the land were so far removed from an urban environment that it had no potential for development, and (2) the agricultural activity on the land is conducted in conformance with generally accepted agricultural practices in use by successful farmers. *Title USA*, 168 Ariz. at 19, 810 P.2d at 642.

The "reasonable expectation of profit" requirement was codified in A.R.S. § 42–167 and, following this codification, the Department of Revenue promulgated its own guidelines defining "reasonable expectation of profit." The court is not bound by these guidelines if it finds they conflict with the legislature's intent. *Miami Copper Co. v. State Tax Comm'n*, 121 Ariz. 150, 589 P.2d 24 (App.1978); *Title USA*, 168 Ariz. at 13, 810 P.2d at 636. However, deference should be given to an administrative agency's interpretation of a statute when that agency is charged with its implementation. *Police Pension Board v. Warren*, 97 Ariz. 180, 398 P.2d 892 (1965) (en banc); *Title USA*, 168 Ariz. at 13, 810 P.2d at 636.

The Department of Revenue's guidelines use an eight-factor test to determine whether there is a "reasonable expectation of profit." These factors include: the manner in which the taxpayer carries on the agricultural activity; the expertise of the taxpayer or his advisors; the time and effort expended by the taxpayer in carrying on the agricultural activity; the success of the taxpayer in carrying on other similar or dissimilar agricultural activities; the taxpayer's history of income or losses with respect to the agricultural activity; the amount of occasional operating profits, if any, which are earned; the financial status of the taxpayer; and whether there are elements of personal pleasure or recreation in carrying on the agricultural activity. *Dep't of Revenue Agric. Manual* ch. 3, 22–27 (Jan. 1, 1991).

With the foregoing history in mind, this Court defines "a reasonable expecta-

tion of operating profit, exclusive of land cost, from the agricultural use of the property." The Court finds that the primary and pertinent tests regarding the issue of "reasonable profit" are as follows:

1. Is the farmer operating the property similarly to other experienced and successful farmers? Put in other words, is this activity in conformance with other generally accepted agricultural practices?

2. Would a reasonable and prudent farmer use the land as a farm if the land were so far removed from an urban environment that it had no potential for development?

3. Are there losses that are sustained from the operation of the farm because of unforeseen circumstances which are beyond the control of the taxpayer?

4. Are there present any personal motives in carrying out the activity of farming, other than the farming operation itself, that would indicate that there is an important ancillary merit to the operator other than solely profit from farming?

5. Can the farmer reasonably expect to make a profit within a reasonable period of time after deducting operating expenses, excluding cost of the land?

The Taxpayers in this case presented to the Court evidence that attempted to support their position that their land can produce a barley crop resulting in a reasonable profit without irrigation ("dry farming"). Taxpayers' evidence focused around a fifteen-year history of local rainfall during the appropriate growing seasons, a four-year history of actual farming of the parcels, the yield, and profits or losses over that four-year period.

Taxpayers also presented expert testimony of a witness and published articles indicating that farming certain types of barley with limited irrigation may be a viable method of producing a worthwhile crop of barley. Further, Taxpayers argued that over the four-year period since the 1988–1989 growing season they would have been able to show an average profit ratio and profit-to-expense ratio that would exceed the Taxing Authorities' expert witness'

opinion of a "reasonable and respectable" profit, i.e. a 50% gross profit ratio.

As mentioned, Taxpayers introduced evidence of *estimated* yields and profits based on the amount of rainfall during the growing season over the past fifteen years and evidence of how the first year of farming (1988–1989) could have been profitable had it been "green chopped" twice and not let go to a full maturity. These projections show that, had crops been planted in this locale for the past fifteen years, at 51% profit ratio could have been expected. This percentage of profit was argued by the Taxpayers as higher than the Taxing Authorities' expert's opinion of what is "reasonable and respectable." Thus, Taxpayers argued they had met the primary criterion of A.R.S. § 42–167(A)(2) (reasonable expectation of operating profit).

On the other hand, the Taxing Authorities argued that this method of farming is not tried and true, is precarious, and that farmers in Arizona do not "dry farm" barley. It was further argued that, if other farms do not dry farm, there obviously must be a reason, and that reason is that such farmers cannot expect a reasonable profit. Also, the Taxing Authorities do contest the expenses of operation as submitted by the Taxpayers and do argue that of the four seasons in which the Taxpayers planted a barley crop, only one has yielded a reasonable profit (over $11,000.00), i.e. 1991–1992. One year yielded a very small profit of $507.00 and the other two years resulted in losses. The Taxing Authorities also argued the tests required to meet the standards set forth in the Department of Revenue's guidelines for "reasonable expectation of profit" were not met by Taxpayers by their having one "lucky" year (1991–1992) and that the criterion was more than one or two years of *any* profit whatsoever.

■ Applying the Court's five-part test to this case, the Court finds Taxpayers have not proved there is a reasonable expectation of profit from the agricultural use of their property.

First, Taxpayers admitted that other experienced and successful farmers do not operate farms similarly to theirs and evidence supported this admission.

Second, the Court finds that a reasonable and prudent farmer would not use this land for dry barley farming even if the land were far removed from an urban environment and had no potential for development. It is clear to the Court that prudent, experienced and successful farmers do not dry farm barley anywhere in Maricopa County, except for two isolated cases. In those cases, farming to yield any crop was purposely stopped for reasons not germane to this case. Also, experiments have been tried in dry farming with *one irrigation*. In this case we have no irrigation other than rainfall.

Third, as for the control of losses or the lack of control of losses due to unforeseen circumstances, the Court finds that a major portion of a prudent farmer's business should be related to reducing the unforeseen circumstances that may result in losses. Certainly water and sunshine are two major factors needed to reduce losses. However, in the case at hand the Court finds that prudent farmers do not trust raising crops from water provided solely by rainfall. The Court is well aware of the arguments and statistics pertaining to rainfall over the past fifteen years in this area. However, a necessary test is whether a reasonable, prudent, experienced, and successful farmer would do the same thing as these Taxpayers. The answer is no.

Notwithstanding the evidence that showed a small profit of $507.00 the second year of operation and a large profit in the fourth year of operation, other evidence was speculation and not actual experience. Taxpayers' evidence suggested that rainfall history would have produced profitable crops in twelve of the past fifteen years. However, rainfall statistics do not take into consideration other factors such as excess of temperatures or winds which the parties agreed could ruin a crop.

Fourth, the facts indicate personal motives are involved in the operation of this land as a farm other than the farm operation itself. Although the Department of Revenue's guidelines refer to such motives

as personal pleasure or recreation, it is obvious from a close reading that personal motives go beyond personal pleasure or recreation.

A court must question the motive of one entering into a farming operation and maintaining such where the farmer does not attempt to eliminate the variables that would indicate questionable businesslike practices, such as controlling the amount of water applied or available on a property. In addition, to continue to farm land that has been long classified as "agricultural" (even if irrigated) which is marginally profitable or even operating at a loss is considerably different from the *commencement* of a farming operation long classified as vacant land.

One must look at the personal motivation. If farming vacant land has solely a profit motivation and no other appeal to holding the land then reclassification as agricultural land would be appropriate. On the other hand, when another appeal may be present, it is incumbent upon a court or taxing authority to look into this collateral appeal. In this case, the collateral appeal is the reduction of taxes by approximately $140,000.00. If the taxing authorities could not look into the personal motivation of the taxpayer in this type of case because the court must exclude the land cost, the Tax Court is excluded from considering a motive other than farming. To exclude consideration of motive could permit reclassification of large vacant office building sites in metropolitan areas if they were planted and the yield produced a couple of profitable years (with the projections of possible past profits based on the fifteen-year rainfall history as presented by Taxpayers in this case).

Fifth, although the statistics are impressive, the test of whether a prudent, experienced, and successful farmer would enter into this business is controlling. The Court finds that the profit shown for two of the four years, plus the projections based on rainfall alone, is not convincing to show that the prudent farmer described above would go into and stay in this business.

There is no question that Taxpayers are qualified farmers. However, the Court finds the type of dry farming operation on the subject property is either in an experimental stage or there are other personal motivations present that exceed the farm operation strictly for profit alone.

The Court also agrees with the Taxing Authorities' argument by finding the operation is not proven by sufficient weight of the evidence to be secure enough to expect a reasonable profit. In addition, the dollar amount of profit realized over four years of actual operation averages out to be $1,074.50 per year. The Court finds that to risk an average expense of $3,940.75 to get a profit of $1,074.50 out of a 150–acre farm, which has no control over the important elements of water, is a precarious venture which a prudent farmer would not enter into with the expectation of a reasonable profit.

The Court finds that because Taxpayers cannot show there is a reasonable expectation of operating profit, exclusive of land cost, from the agricultural use of their property, Taxpayers' property is not "used for agricultural purposes" as defined by A.R.S. § 42–167. Taxpayers' land was properly classified as "vacant land" for tax years 1991 and 1992.