534 P.2d 278

**DEPARTMENT OF PROPERTY VALUATION and Santa Cruz County Assessor, Appellants,**

v.

**Don V. COOKEY and Emma Cookey, husband and wife, Appellees.**

**No. 2 CA–CIV 1767.**

Court of Appeals of Arizona, Division 2.

April 24, 1975.

---

N. Warner Lee, Former Atty. Gen., Bruce E. Babbitt, Atty. Gen. by Mary Z. Chandler and Donald P. Roelke, Asst. Attys. Gen., Phoenix, for appellants.

Solsberry & McDonald by L. Bernell Solsberry and Kerry A. McDonald, Nogales, for appellees.

## OPINION

HOWARD, Chief Judge.

The central issue in this appeal is whether there was any evidence to sustain the conclusion of the court below that appellees' property should be assessed as "livestock ranch property". Finding the record barren of any such evidence, we must reverse.

■ To qualify as livestock ranch property, a parcel of land must first meet the definition of agricultural property. As stated in the guidelines of the Department of Property Valuation:

"AGRICULTURAL PROPERTY IS THAT PROPERTY USED FOR THE PURPOSE OF AGRONOMY, HORTICULTURE OR ANIMAL HUSBANDRY:

1. In which the primary function is to produce an agricultural crop or commodity.

2. In which the primary investment is for the purpose of farming or stock ranching.

3. Capable of being utilized, solely from its agricultural ability, to sustain economic self-sufficiency and return a normal profit."

Pursuant to A.R.S. § 42–151, appellees brought this action to challenge the classification of their property as a nonqualifying ranch (Class 87). They own approximately 100 acres of land near Sonoita, Arizona, in an area that has historically been used as grazing land. For tax purposes 19 of those acres have been treated as the homesite area. The remaining 78 acres are the subject of the disputed tax classification. In addition, appellees leased approximately 1,150 acres of land in 1973, 300 to 400 acres of which were in Pima County, the remainder being located in Santa Cruz County. Of this leased land, only 100 acres were contiguous to the parcel owned by appellees. On an average appellees were ranging 35 to 40 head of cattle on their property. Appellee-husband is employed at a service station in Tucson and devoted approximately three days a week to the cattle ranching operation in 1973. Appellees intend to develop a herd of pure bred cattle and have amassed con-

siderable ranch equipment such as trucks, trailers and corrals.

Since 1970, when this operation was begun, appellees have never netted a profit from their ranching activities. Mr. Charles Armer, a former employee of the Department of Property Valuation in charge of agricultural, farm and ranch valuations, testified that appellees' property was not agricultural property, and therefore not livestock ranch property, because it was not "large enough to be economically self-sustaining." In spite of this evidence, the court below concluded the subject property was "livestock ranch property, (Class 47) [as] promulgated by the guidelines of the Department of Property Valuation."

■ The critical requirement in this case is the third in the Department of Property Valuation's guidelines, that the property be capable of being economically self-sufficient. Assuming, though not deciding, that we should include all of the leased land in our deliberations, nevertheless there is no evidence indicating that the third guideline can be met. Mr. Charles Armer testified as follows:

"A. * * * It isn't large enough to be economically self-sustaining.

Q. In your consideration as to whether it was large enough to be economically self-sufficient, have you also considered the leased property?

A. Yes, for the total operation."

Armer based his opinion on the fact that appellees' lands could only support 32 animal units. Appellees urge that the court should consider the fact that they are trying to develop a herd of pure bred animals. Even if we considered that fact, the record is devoid of any evidence that with a herd of 32 pure bred animals the lands could be economically self-sufficient. The only other evidence bearing on this issue is the fact that the operation had never been profitable.

■ Appellees allege that the fact that a ranch fails to make a profit does not "in and of itself preclude the ranch from being classified as grazing property . . . ." While that statement may well be true, nevertheless a past history of economic losses reinforces Mr. Armer's conclusion just as the continuing lack of profits may be evidence which precludes the allowance of farm losses as a business expense for income tax purposes. See, Morton v. Commissioner of Internal Revenue, 174 F.2d 302 (2d Cir. 1949), cert. denied 338 U.S. 828, 70 S.Ct. 77, 94 L.Ed. 503. Appellees also contend that there was no evidence that the ranch's unprofitability would continue into the future. Even if this contention were true, appellees' cause would not be aided. Taxpayers who challenge an assessment in superior court have the burden of proof. Graham County v. Graham County Electric Coop., Inc., 109 Ariz. 468, 512 P.2d 11 (1973).

Reversed with directions to dismiss appellees' complaint.

KRUCKER, J., and WILLIAM E. DRUKE, Judge of the Superior Court, concur.

NOTE: Judge JAMES D. HATHAWAY having requested that he be relieved from consideration of this matter, Judge WILLIAM E. DRUKE was called to sit in his stead and participate in the determination of this decision.