790 P.2d 297

**J. Elliott HIBBS, Director, Department of Revenue, State of Arizona, ex rel., ARIZONA DEPARTMENT OF REVENUE, Plaintiff–Appellant,**

v.

**CHANDLER GINNING COMPANY, an Arizona corporation, and Western Cotton Services Corporation, a Delaware corporation, Defendants–Appellees.**

No. 1 CA–TX 89–001.

Court of Appeals of Arizona, Division 1, Department T.

March 8, 1990.

**12**

Robert K. Corbin, Atty. Gen. by James D. Winter, Francis Migray and Jack B. Schiffman, Asst. Attys. Gen., Phoenix, for plaintiff-appellant.

Donald P. Roelke, Phoenix, for defendant-appellee Chandler Ginning Co.

Snell & Wilmer by Douglas W. Seitz and Eileen J. Moore, Phoenix, for defendant-appellee Western Cotton Services Corp.

GERBER, Judge.

J. Elliott Hibbs, Director of the Arizona Department of Revenue (the Department), appeals from summary judgment entered in favor of taxpayers Chandler Ginning Company (Chandler Ginning) and Western Cotton Services Corporation (Western Cotton). We must resolve (1) whether the superior court had subject-matter jurisdiction in Maricopa County Superior Court Cause No. TA 87-00080, one of five consolidated property tax appeals brought by the Department; and (2) whether property used in the ginning of cotton is property "used for agricultural purposes" within A.R.S. § 42–162(A)(4).

## PROCEDURAL BACKGROUND

Appellee Chandler Ginning is a non-profit cooperative association. Chandler Ginning owns four parcels of property in rural agricultural areas of Chandler and eastern Maricopa county on which it gins and bales cotton. In 1984, Chandler Ginning contested the classification of these parcels as class three (commercial) property. See A.R.S. § 42–162(A)(3).[1] The State Board of Tax Appeals, Division 1, classified the parcels as class four (agricultural) property for 1984. The Department did not appeal this decision to the superior court.

In 1985, the Maricopa County Assessor again classified Chandler Ginning's four parcels as class three property. Chandler Ginning contested this classification through the administrative appeal process. The Board of Tax Appeals again held that the four parcels should be classified as class four property. Again the Department did not appeal.

In 1986, the Maricopa County Assessor initially classified Chandler Ginning's four parcels as class three property. On a protest from Chandler Ginning the assessor sought to change the classification to class four. The Department disapproved. See A.R.S. § 42–148. Chandler Ginning appealed to the Maricopa County Board of Equalization, which changed the classification to class four. See A.R.S. § 42–241 et seq. The Board of Tax Appeals upheld the class four classification on appeal by the Department. The director of the Department of Revenue then appealed this decision to the Maricopa County Superior Court (Cause No. TA798). See A.R.S. §§ 42–141(B)(7) and 42–177.

---

1. The Department has taken the position throughout this litigation that cotton gins are property devoted to commercial or industrial uses and must be classified as class three property. The classification of property determines the percentage by which its assessed valuation will be determined. A.R.S. § 42–227(B). Class three property is assessed at twenty-five percent of its full cash value, while class four property is assessed at sixteen percent of its full cash value. A.R.S. § 42–227(B)(3) and (4). The tax rate is applied against the assessed valuation to determine the amount of taxes owed on the property. See *Bella Vista Ranches v. Cochise County*, 159 Ariz. 326, 767 P.2d 49 (App.1988). As Division Two of the court stated in *Arizona Telco Federal Credit Union v. Department of Revenue*, 158 Ariz. 535, 764 P.2d 20 (App.1988), "the classification assigned to specific property has very significant taxation consequences." *Id.* at 535–37, 764 P.2d at 21–22.

In 1987, the Maricopa County Assessor classified Chandler Ginning's four parcels as class four property. The Department took no action to change this classification before 1987 classification notices were mailed to Chandler Ginning. On May 19, 1987, the Department challenged the assessor's classification before the Maricopa County Board of Equalization. The Board upheld the class four classification. The Department of Revenue then filed another property tax appeal in Maricopa County Superior Court (Cause No. TA87–00080).

Appellee Western Cotton is a Delaware corporation authorized to do business in Arizona. It operates cotton gins in five different Arizona counties. In 1987, the boards of equalization of all five counties classified Western Cotton's cotton gins as class four property. On appeal by the Department of Revenue, the Board of Tax Appeals upheld this classification. The Department commenced property tax appeals pursuant to A.R.S. § 42–177 in all five counties. By stipulation, venue in all cases was transferred to Maricopa County.

The Department's 1986 and 1987 property tax appeals against Chandler Ginning and its 1987 property tax appeals against Western Cotton were ultimately consolidated. On September 30, 1988, the Department filed a new property tax appeal in the Arizona Tax Court pertaining to Western Cotton's properties in four of the five counties (Cause No. TA 88–00001). This appeal was then consolidated with the other pending appeals.

On January 4, 1989, the parties argued cross-motions for summary judgment. The trial court granted defendants' motions for summary judgment. The trial court based its ruling on two grounds: first, that the determinations by the Board of Equalization were presumptively correct; and second, that "used for agricultural purposes" necessarily includes ginning because it is a necessary part of producing a marketable, agricultural commodity. The trial court entered formal judgments in favor of Chandler Ginning and Western Cotton and this timely appeal followed. We have jurisdiction pursuant to A.R.S. §§ 12–2101(B), 12–120.21(A) and 12–170(C).

## SUBJECT–MATTER JURISDICTION IN TA 87–00080

Chandler Ginning contends by way of cross-question on appeal that the trial court lacked jurisdiction in Maricopa County Court Cause No. TA 87–00080, and that the judgment for Chandler Ginning in that action must necessarily be affirmed. The Department urges, however, that Chandler Ginning could only challenge the trial court's jurisdiction in TA 87–00080 by filing a cross-appeal. Citing *Walters v. First Federal Savings & Loan Ass'n of Phoenix*, 131 Ariz. 321, 641 P.2d 235 (1982) and *Maricopa County v. Corporation Commission of Arizona*, 79 Ariz. 307, 289 P.2d 183 (1955), the Department argues that a cross-appeal was required because the trial court did not base its judgment against the Department in TA 87–00080 on lack of subject-matter jurisdiction.

We agree with the Department. It is true that subject-matter jurisdiction cannot be waived and may be raised at any stage of the proceedings. *Rojas v. Kimble*, 89 Ariz. 276, 361 P.2d 403 (1961). Where the trial court does not base its judgment on its own lack of subject-matter jurisdiction, however, an appellee can assert an appellate challenge to the trial court's subject-matter jurisdiction only by prosecuting a cross-appeal. *Bowman v. Board of Regents*, 785 P.2d 71 (Ariz.App. 1989). In *Bowman* we stated:

... [W]e summarize our analysis in a three-part rule. In the absence of a cross-appeal, an appellee may raise a cross-issue in its answering brief only when it meets these criteria:

(1) The cross-issue must be an argument in support of the judgment, not merely in support of the ultimate disposition on grounds which would attack the judgment;

(2) The cross-issue must have been presented and considered by the trial court in rendering the judgment, whether or not the trial court ultimately rejected

or simply ignored the issue in any disposition; and

(3) The cross-issue must not result in an enlargement of appellee's rights or a lessening of appellant's rights on appeal. 785 P.2d at 79.

Chandler Ginning's challenge to the trial court's jurisdiction in TA 87–00080 attacks rather than supports the judgment. Because Chandler Ginning did not raise this challenge by cross-appeal, we lack subject-matter jurisdiction to consider it. *Bowman v. Board of Regents*, 785 P.2d at 79.

### IS A COTTON GIN "USED FOR AGRICULTURAL PURPOSES" WITHIN A.R.S. § 42–162(A)(4)?

The dispositive question on appeal is whether a cotton gin and the land on which it is located constitutes agricultural property for purposes of Arizona property tax laws. A.R.S. § 42–162(A)(4). In the trial court and on appeal both sides' arguments have focused on the definition of "agricultural purposes."

Cotton fiber, which contains seeds, grows inside cotton bolls on the cotton plant. "Seed cotton" is the product picked from the plant by a machine and formed into a "module." It is then transported to a cotton gin.

A cotton gin is composed of a number of machines with saws or combs. Cotton is fed into the gin and the action of saws or combs separates the cotton fibers from the seeds, stems and trash that accompany it from the field. The fibers are then collected and pressed into 500–pound bales of uniform size.

After a bale has been pressed, a sample of the ginned cotton is removed and sent to the United States Department of Agriculture for grading. The grade assigned to a bale is used in determining its value. Each bale is separately numbered and thereafter retains its own identity.

Throughout the ginning process, the cotton grower retains title to the cotton and the cottonseed. Once the ginning is com-

pleted and each bale of cotton has been graded, the grower sells the cotton.

The affidavits of Western Cotton and Chandler Ginning uniformly averred that there exists no market for unginned cotton and that cotton does not become a marketable product until it has been ginned. The Department asserted the contrary proposition but did not offer admissible evidence in support of it. The Department does not take the position on appeal that unginned cotton can be marketed.

Until 1989, the Arizona statutes governing property taxation did not define property "used for agricultural purposes." Pursuant to its authority under A.R.S. § 42–141(A)(5) to promulgate guidelines for use in determining the valuation of property,[2] the Department adopted the following definition, effective January 1, 1982, in its Agricultural Manual No. 1532:

Agricultural property is that real and personal property used for the purpose of agronomy, horticulture or animal husbandry:

(1) In which the primary function is to produce an agricultural crop or commodity.

(2) In which the improvements are primarily oriented to agricultural functions or agricultural support functions; i.e., farm residence, transient workers' quarters, farm equipment storage, farm produce storage, stock loading ramps and pens, etc.

(3) In which the total operation consists of at least the minimum number of acres or animal units specified in pages 205 through 208 or which qualifies for farm designation in accordance with provisions for exemption from minimum acreage requirements....

(4) Which is used with a reasonable expectation of profits solely from its agricultural use.

Effective January 1, 1986, the Department added the following passage:

*Agricultural Property Designation*

---

**2.** *See Burns v. Herberger,* 17 Ariz.App. 462, 498 P.2d 536 (1972), *overruled on other grounds,* *Golder v. Department of Revenue,* 123 Ariz. 260, 599 P.2d 216 (1979).

In determining the classification of agricultural as opposed to commercial property designation, the appraiser must establish whether the agricultural product involved is being produced or processed. Property used in the "producing" or raising of agricultural products (field crops, ornamentals, poultry, cattle, etc.) shall be classified agricultural use property (Legal Class 4).

Property used to "process" * agricultural products (cotton gins, packing houses, etc.) shall be classified as commercial use property (Legal Class 3). *Webster's Third New International Dictionary (unabridged) defines processing as "to prepare for market, manufacture, or commercial use by subjecting to some process."

(Emphasis in original.)[3] The Department urges that its amended guidelines require appellees' cotton gins to be classified as class three property.

The Department also relies on *Central Citrus Co. v. Department of Revenue,* 157 Ariz. 562, 760 P.2d 562 (App.1988), where Division Two of this court treated the Department's four-part pre–1986 definition of agricultural property, quoted *supra* at 8, as establishing the legal definition of property "used for agricultural purposes" within A.R.S. § 42–162(A)(4). The court stated:

Essentially, for property to meet the criteria for agricultural property, it must be used for growing crops or for raising animals. These criteria merely fill in details of legislation already enacted. *State v. Arizona Mines Supply Company,* 107 Ariz. 199, 205, 484 P.2d 619, 625 (1971). The definition of agricultural property contained in the guidelines has repeatedly been upheld.

*Id.* at 565, 760 P.2d at 565.

Following the guidelines, *Central Citrus* upheld a determination of the State Board of Tax Appeals, Division One, that a citrus packing plant at which citrus goods were graded, sized, washed, waxed, treated and packed was devoted to a commercial or industrial use rather than used for agricultural purposes. The court stated:

The decision of the board classifying the Central Citrus property as commercial rather than agricultural recognizes the distinction between ordinary farming operations and commercial operations arising from farming operations (citation omitted.) The Board's determination also recognizes the continued trend of specialization and division of labor and the corresponding classification of operations for tax purposes. In *Farmers Reservoir and Irrigation Company v. McComb,* 337 U.S. 755, 761, 69 S.Ct. 1274, 1278, 93 L.Ed. 1672, 1679–80 (1949), the Supreme Court stated:

Economic progress, however, is characterized by a progressive division of labor and separation of function.... In this way, functions which are necessary to the total economic process of supplying an agricultural product, become, in the process of economic development and specialization, separate and independent productive functions operated in conjunction with the agricultural function but no longer a part of it.

157 Ariz. at 565–66, 760 P.2d at 565–66. The Department also urges that the 1986 addition to its guidelines buttresses the *Central Citrus* analysis and requires the conclusion that cotton gins are commercial rather than agricultural property.

On the other hand, Western Cotton and Chandler Ginning argue that agricultural use includes all steps necessary for producing a "first marketable product." Both principally rely on *Wayland v. Kleck,* 57

---

3. In *Pesqueira v. Pima County Assessor,* 133 Ariz. 255, 650 P.2d 1237 (App.1982) Division Two of this court stated incorrectly that the Department of Revenue's guidelines pursuant to A.R.S. § 42–141(A)(5) "are binding on the court." 133 Ariz. at 258, 650 P.2d at 1240. As authority for this proposition, Division Two cited only *Department of Property Valuation v. Cookey,* 23 Ariz.App. 470, 534 P.2d 278 (1975), which does not support it. However, in *Stewart Title & Trust v. Pima County,* 156 Ariz. 236, 751 P.2d 552 (App.1987), without discussing *Pesqueira,* Division Two properly recognized that a provision of the Department of Revenue's agricultural manual that was contrary to statutory intent "may not properly be considered ..." 156 Ariz. at 243, 751 P.2d at 559.

Ariz. 135, 112 P.2d 207 (1941). However, the court in *Central Citrus* specifically held *Wayland* inapplicable in interpreting the property tax classification statutes. Western Cotton and Chandler Ginning also urge that the Department's Agricultural Manual guidelines ignore the general principle that taxes should be imposed on property in proportion to its use, productivity, utility and general setting in the economic organization of society. *See Apache County v. Atchison, Topeka & Santa Fe Railway Company*, 106 Ariz. 356, 476 P.2d 657 (1970). Both appellees emphasize the deposition of Robert Koehler, the author of the 1986 addition to the Department's guidelines. Koehler agreed that the "production" of an agricultural crop includes all the steps necessary to make it a marketable commodity. He also agreed that, assuming there was no market for unginned cotton, cotton ginning was within the definition of the "production" of cotton.

■■■ Our legislature's enactment of new A.R.S. § 42–167 (1989), however, obviates the need for us to choose between the competing general definitions of "agriculture" offered by the parties to resolve this case. Section 42–167, effective September 15, 1989, was added to A.R.S. Title 42, Chapter 1, Article 4, in which § 42–162 also appears. Section 42–167 provides in pertinent part:

A. Property is not eligible for classification as property *used for agricultural purposes* unless it meets the following criteria:

1. The primary use of the property is as agricultural land and the property has been in active production in conformance with generally accepted agricultural practices for at least seven of the ten prior years. . . . .

2. There is a reasonable expectation of operating profit, exclusive of land cost, from the agricultural use of the property.

3. If the property consists of noncontiguous parcels, the noncontiguous parcels shall be managed and operated on a unitary basis and each parcel shall make a functional contribution to the agricultural use of the property.

. . . .

K. In this section, unless the context otherwise requires *"agricultural land"* means land which is one or more of the following:

(1) Cropland in the aggregate of at least twenty gross acres.

(2) An aggregate ten or more gross acres of permanent crops.

(3) Grazing land with a minimum carrying capacity of forty animal units and containing an economically feasible number of animal units.

(4) Land devoted to high density use in the production of commodities.

(5) *Land devoted to use in the processing of cotton necessary for marketing.*

Laws 1989, Ch. 61, Section 1. (Emphasis added.)

Our supreme court has stated:

*In pari materia* is a rule of statutory construction whereby the meaning and application of a specific statute or portion of a statute is determined by looking to statutes which relate to the same person or thing and which have a purpose similar to that of the statute being construed. Statutes *in pari materia* must be read together and all parts of the law on the same subject must be given effect, if possible. (Citations omitted.) The objective of the rule requiring related statutes to be construed *in pari materia* is to carry into effect the intent of the Legislature.

*Collins v. Stockwell*, 137 Ariz. 416, 419, 671 P.2d 394, 397 (1983). *Accord Atchison, Topeka & Santa Fe Railway Co. v. Department of Revenue*, 162 Ariz. 127, 781 P.2d 605 (App.1989). When statutes relate to the same subject matter, and the later enactment does not contain an express repeal or amendment, the later enactment is deemed to have been enacted in accordance with the legislative policy embodied in the earlier statute. *Desert Waters, Inc. v. Superior Court*, 91 Ariz. 163, 370 P.2d 652 (1962). Our supreme court has also stated:

[T]he various provisions of our taxing statutes are to be read together and ordinarily construed as a whole. Accordingly, if there were a definition of general

applicability set forth in one provision, it would be given weight as indicating the appropriate definition of the same word or phrase in another provision.

*State Tax Commission v. Staggs Realty Corp.,* 85 Ariz. 294, 297–98, 337 P.2d 281, 284 (1959). *See also Ebasco Services, Inc. v. State Tax Commission,* 105 Ariz. 94, 459 P.2d 719 (1969) (courts may look to subsequently enacted definition in searching for expression of earlier legislative intent).

The Department tacitly acknowledges that A.R.S. § 42–167 "specifically provide[s] for the inclusion of cotton gins in the agricultural classification." The Department argues, however, that § 42–167(K) does not constitute a subsequent declaration of legislative intent concerning the meaning of § 42–162(A)(4). *See State v. Sweet,* 143 Ariz. 266, 693 P.2d 921 (1985). The Department urges that subsection (K) is a "clear and distinct change in the operative language of the statute" occurring "after a considerable time lapse from the original enactment."

We do not agree. Sections 42–162 and 42–167 are plainly *in pari materia* because they relate to the same principles and purposes. Section 42–162 creates an eight-point property classification system, and the succeeding sections build upon it by elaborating on the different classifications. Section 42–167 elaborates on the classification for agricultural property found in § 42–162; it does not change the classification for agricultural property but instead defines such property. Moreover, § 42–167 does not change statutory language that was previously definite and unambiguous. Ambiguity can arise from uncertainty about the meaning of particular words in a statute. *State v. Sweet,* 143 Ariz. at 269, 693 P.2d at 924. Before the enactment of § 42–167, the statutes nowhere defined the phrase "used for agricultural purposes." Section 42–167(K) now supplies a comprehensive definition of that phrase. As the court concluded in an analogous situation in *Sweet:* "The amendment did not change that which was clear and distinct in the first place. It supplied the clarification—what was intended in the first instance." *Id.* at 271, 693 P.2d at 926. *See also Moore v. Pleasant Hasler Con-*

*struction Co.,* 51 Ariz. 40, 76 P.2d 225 (1937).

Any lingering doubts concerning what the legislature intended in enacting § 42–167(K)(5) are laid to rest by the legislative history. The provision that became § 42–167 was introduced as S.B. 1366. The minutes from the Senate Committee on Finance reflect the following discussions regarding S.B. 1366:

Senator Corpstein asked where the language had come from regarding cotton gins. Senator Todd explained cotton gins were currently classified as agricultural property because of their marketing associated with raw cotton. The ginning process is required agricultural activity to get that commodity ready for market. Senator Corpstein said he did not see this quite the same way as Senator Todd.

. . . .

Senator Gutierrez asked DOR's position regarding cotton processing. Ms. McVey [previously identified as a representative of the Department of Revenue] replied DOR is in litigation with a cotton gin co-op. DOR lost the first round and will be appealing the decision. The first language, brought by Joe Abate, was very broad and DOR was concerned other ag-related industries might be included in the broad definition to move them from Class 3 to Class 4. This language Mr. Abate brought now is very specifically for cotton ginning. Mr. Abate makes the case that there is no commercial usage of cotton until the seeds are removed. Senator Gutierrez said he was a little leery of the legislation going into a litigation.

. . . .

*Joe Abate* spoke from the audience, saying for all major counties there needed to be a clarification of cotton gins because there are definitions. Senator Gutierrez said the committee is not just clarifying, it is resolving a court suit. There should not be a clarification as it might become involved in the litigation.

Arizona State Senate, Minutes of the Committee on Finance (Discussion of S.B. 1366), 39th Leg., 1st Reg. Sess., March 13, 1989, at 6–7.

18

Despite the misgivings stated by some of the senators, S.B. 1366, with the amendment quoted above, passed by a roll call vote of eight ayes, no nays and one absent. The amended bill was later enacted by both houses of the legislature and approved by the governor. Laws 1989, Ch. 61. In our opinion, given this legislative history, the trial court did not err in holding that appellees' cotton gins were properly classified as class four property under A.R.S. § 42–162(A)(4). We view the issue as exclusively one of law and do not rely on the statutory presumption that a classification approved by the appropriate state or county authority is correct and lawful. A.R.S. § 42–178(B). We therefore do not consider whether the trial court erred in relying on that presumption. We hold that property involved in cotton ginning is property "used for agricultural purposes" and so is class four property for state tax purposes.

Because of the view we take in this case, we need not consider whether the Department violated principles of equal protection by appealing the class four classifications of cotton gins as to some but not all cotton gin owners in Arizona. We also need not consider whether the Department's Agricultural Manual guidelines on the classification of property are beyond the Department's legislatively delegated authority. Similarly, we do not reach the question of whether Chandler Ginning's cotton gins were properly classified as class four property because Chandler Ginning is a private, non-profit organization.

Chandler Ginning and Western Cotton request awards of attorney's fees on appeal pursuant to A.R.S. § 12–348. We grant their request. They may establish the amounts of their awards by complying with Rule 21, Arizona Rules of Civil Appellate Procedure.

Affirmed.

JACOBSON, P.J., and FIDEL, J., concur.