855 P.2d 430

TITLE USA, as Trustee under Trust Agreement No. 654; W.P. Ritter Limited Partnership; Thomas Tait and Patricia Tait, husband and wife; and Thomas Tait, husband of Patricia Tait, dealing with his sole and separate property, Plaintiffs–Appellants,

v.

MARICOPA COUNTY, a political subdivision of the State of Arizona; and Arizona Department of Revenue, an agency of the State of Arizona, Defendants–Appellees.

No. 1 CA–TX 91–0033.

Court of Appeals of Arizona, Division 1, Department T.

June 15, 1993.

Beus, Gilbert & Morrill by K. Layne Morrill and Scott D. Larmore, Phoenix, for plaintiffs-appellants.

Grant Woods, Atty. Gen. by Janice M. Marquez and William D. Hostetler, Asst. Attys. Gen., Phoenix, for defendants-appellees.

## OPINION

JACOBSON, Judge.

The Maricopa County Board of Supervisors, acting as the County Board of Equalization, determined that a 147–acre parcel at I–10 and Warner Road in Maricopa County was to be valued under the favorable "income" method specified by A.R.S. § 42–141(A)(5) because it constituted property "used for agricultural purposes." The Arizona Department of Revenue (Department) filed an untimely appeal from this ruling to Division One of the Arizona Board of Tax Appeals (BTA). *See* A.R.S. § 42–245. BTA declined to entertain the appeal. Later, however, at the request of the County and the Department, BTA conducted an equalization hearing concerning the parcel and determined that it did not qualify as "used for agricultural purposes" within § 42–245.

The legal and beneficial owners of the parcel ("Taxpayers") appealed to the tax court. On trial *de novo* the tax court entered a judgment and opinion that sustained the Board's order. *See Title USA v. Maricopa County*, 168 Ariz. 10, 810 P.2d 633 (Tax 1991).[1] The Taxpayers now appeal from that judgment, raising the following issues:

1. Whether the tax court erred in holding that, to justify a classification of land as used for agricultural purposes for the 1988 tax year, the crop must have been planted by January 1, 1988;

2. Whether the tax court erred in holding that the Taxpayers' property was not "used for agricultural purposes" within A.R.S. § 42–141(A)(5) during the 1988 and 1989 tax years because it was not "used with a reasonable expectation of profit" from its agricultural use;

3. Given the Department and County's failure to timely appeal to BTA from the Board's finding for the Taxpayers, whether BTA exceeded its authority in issuing an "equalization" order determining that the property should not be classified as "used for agricultural purposes."

## FACTS AND PROCEDURAL HISTORY

### The Property

The Taxpayers' property is on the downward slope of the South Mountain water-

---

1. This opinion also disposed of another taxpayer dispute, *Marley v. Arizona Department of Revenue,* Cause No. TX 89–00963. We consider only that portion of the opinion dealing with Tait's property.

shed. In the early 1950's, it was utilized for growing vegetables with on-site well irrigation. The well has since been abandoned. When the Tait interests purchased the property in 1973, it had not been used as a farm for a considerable time.

When it rains more than about ¾ inch in the area, significant amounts of water from South Mountain and the development at Ahwatukee flow under I–10 onto the Taxpayers' property. The average projected runoff onto the property during a typical growing season of August through March is 141 acre-feet. The property's soil configuration, three to four feet of Valencia sandy loam over hardpan caliche, retains moisture well.

### Activities of Thomas Tait

Appellant Thomas Tait since 1964 has actively farmed areas in Maricopa County ranging from 350 to 1200 acres. He has had extensive experience with cotton, wheat, alfalfa, and barley. The tax court found he was unquestionably a "competent agronomist."

From 1975 through 1985, Tait built berms and check dams on the property. These enabled him to irrigate substantially all of the property with rainwater. Over the same period he removed hundreds of honey mesquite seedlings from a thicket along its southeastern corner and transplanted them to areas of the property that now received rainwater. Over the years Tait traded honey mesquite trees for services, used them on his commercial developments, and fostered commercial goodwill by donating them to the City of Tempe for its golf course and Kiwanis Park.

### Dry Land Barley [2]

Tait had previously grown barley in Maricopa County, both with and without irrigation. In 1977–78 Tait grew an 80–acre dry land barley crop at 59th Avenue north of Roosevelt. In 1986 Tait decided to produce a barley crop on the property at issue here.

Before planting the crop, Tait consulted several articles about low moisture barley strains that had been researched and developed by the University of Arizona. He learned that these strains could produce as much as 2,000 pounds per acre without preplanting irrigation, and that as little as 3½ inches of winter rain might be sufficient to produce a seed crop and adequate vegetation. Tait also testified that he learned from meteorological data that the property received over seven inches of winter rain annually in addition to the South Mountain watershed runoff. A retired University of Arizona Extension Agent for field crops testified that over a 30–year period the average rainfall from October through March for the area of Tait's property was 5.17 inches.

Evidence indicated that several agricultural lenders made no crop loans for dry land barley in Maricopa County. One lender representative testified that dry land barley farming is not an accepted farming practice in Maricopa County, and that barley is not dry farmed here because Maricopa County has insufficient rainfall to allow it to be done consistently.

During 1986 Tait began removing brush, other vegetation, and small trees from the property with his own farm equipment. This equipment proved inadequate to complete the work. On December 12, 1987, Tait engaged a clearing and earth-moving contractor to clear the property so field production could begin in 1988. By the end of that month, a substantial part of the work had been done, and there would have been no doubt in an observer's mind that the land was being cleared. In late 1987 and early 1988, Tait commenced the process of registering the property as a farm with the Agricultural Stabilization and Conservation Service.

By late February 1988, clearing and grubbing had been virtually completed and the property disked and dragged. This land clearance came too late, however, for planting a crop in early 1988. The proper-

---

**2.** "Dry land barley" refers to production of a barley crop with the use of rainwater alone and without the use of irrigation water.

ty was summer-fallowed to eliminate weeds and unwanted growth, and in June was disked again.

After a significant rain in mid-October 1988, Tait planted "Poco" barley, a variety suited to the characteristics of the property. The crop was appropriately cultivated. To minimize winter frost damage, sheep were allowed to graze the crop in mid-December.[3] This generated revenue of $744.

The crop was thereafter fertilized, and regrew to a strong, healthy stand by late January 1989. In late February, Tait estimated that normally anticipated rainfall would cause the property to yield from 1 to 1½ tons of grain seed. Expert witnesses testified that, if the crop had been "green-chopped" (harvested while green and sold for cattle fodder) in March, a yield of four to six tons of plant matter or 1 to 1¼ tons of dry matter per acre could have been obtained. However, the area experienced a dry spell from January through March and temperatures substantially in excess of seasonal normals from January through mid-April. The seed grain yield from the property was accordingly only nominal, and Tait lost about $4,000 on the 1988–89 crop year.

Twice during the 1988–89 growing season Tait prepared and revised production budgets that projected profitable returns on the barley crop. Although it is uneconomical for farmers in Maricopa County to grow barley with full irrigation, there was evidence that under appropriate cultivation barley can be grown at a profit without irrigation. There was also evidence that, aside from unusual periods of drought and high temperature, barley dry farming on

Tait's property could be expected to yield profits of $40 to $120 per acre.

The tax court found:

Barley is not a common crop in Maricopa County. Virtually all farmland in Maricopa County is irrigated. The cost of growing barley with irrigation makes such a use of irrigated land non-competitive with better money crops such as cotton and alfalfa. Barley is ideally dry farmed at altitudes of 4,000 feet or more, or in latitudes north of Arizona where the weather is cooler, and there is more rainfall. Prior to Tait's attempt in 1988, there had been a few isolated instances in Maricopa County where barley had been successfully grown with rain water. To have a successful barley crop without irrigation in Maricopa County, however, there must be greater than average rainfall, and it must fall at just the right times during the growing season. From the evidence presented at trial, the Court finds dry land barley farming in Maricopa County to be a most precarious undertaking.

168 Ariz. at 15, 810 P.2d at 638.

*Administrative Proceedings*

From 1978 through 1989, the Maricopa County Assessor classified and valued the Tait property as class four nonagricultural land.[4] The Taxpayers appealed the assessor's decision for tax year 1988 to the County Board of Equalization. Based on an agreement between the assessor and a representative of the Taxpayers, the County Board entered a decision classifying and valuing the property as "used for agricultural purposes." Both the assessor and the Department commenced untimely appeals from the County Board's decision to

---

**3.** The tax court found:

Sheeping is an accepted activity often done in late fall or early winter to minimize anticipated damage from frost. It also produces some revenue from the crop.

168 Ariz. at 15, 810 P.2d at 638.

**4.** A.R.S. § 42–162(A)(4) places within class four, *inter alia*, "[a]ll real property and the improvements to such property, if any, used for agricultural purposes...." A.R.S. § 42–141(A)(5) provides in part: "Land used for agricultural purposes shall be valued using solely the income

approach to value without any allowance for urban or market influences." In this case, because the property was classified as nonagricultural vacant land, its value was determined by the use of conventional appraisal methods, which include the potential value as urban development. Thus, conventional appraisal in this case generated a value much higher than would appraising the property by the approach set forth for agricultural land under A.R.S. § 42–141(A)(5).

BTA. BTA declined to entertain them. Thereafter, the Department asked BTA to conduct an equalization hearing concerning the property pursuant to A.R.S. § 42–174. BTA agreed to do so, and, subsequent to that hearing, determined that the property should be classified as nonagricultural.

## PROCEEDINGS IN THE TAX COURT

### Taxpayers' Action

The Taxpayers commenced this action pursuant to A.R.S. §§ 42–176 and 42–177 on October 28, 1988. They moved for summary judgment on the theory that the County Board's classification decision in their favor became final when neither the County nor the Department timely appealed to BTA. They further contended that *res judicata* barred BTA's decision reclassifying the property as nonagricultural after an equalization hearing, and that, in any event, BTA could change the classification of property only on appellate review of a County Board classification decision (A.R.S. § 42–245) and lacked jurisdiction to do so when acting as the state board of equalization (A.R.S. § 42–174).

The tax court denied the motion. It reasoned that nothing in the governing statutes suggested BTA's appellate and equalization functions were intended to be mutually exclusive. It held that A.R.S. § 42–174 was sufficiently broad to allow BTA to conduct an equalization hearing on a County Board determination, whether or not it had been appealed. It further held:

> The goal of the Legislature to equalize property taxes throughout the State is to be achieved primarily by equalization proceedings initiated by the Department of Revenue. These proceedings are authorized pursuant to A.R.S. § 42–150. The language of A.R.S. § 42–150 makes it clear that the Legislature intended that the Department equalize assessed values by changing valuation or classification or both. The statutory scheme provides that the first level of review of the Department's equalization function is with the State Board of Tax Appeals pursuant to A.R.S. § 42–173. The Court holds that it was the intent of the Legislature

in enacting A.R.S. § 42–174 to provide the State Board with the same authority to conduct its own equalization hearings as it has in reviewing those initiated by the Department. Such authority permits the State Board to change classification as well as valuation.

### The Tax Court's Opinion

The merits of this dispute were tried without a jury over 10 days in November 1989. On February 2, 1990, the tax court ruled for the Department and County. Pursuant to A.R.S. § 12–171, the tax court filed a written opinion now published as *Title USA v. Maricopa County*, 168 Ariz. 10, 810 P.2d 633 (Tax 1991).

In its opinion, the tax court held that the legislature did not intend for land that was being cleared for planting to be classified as agricultural. The court stated:

> [T]he issue is the classification of property first used for agricultural purposes after a long absence of such activity. In such a case, the Court holds, that in order to justify a classification of land used for agricultural purposes, the crops must have been planted, or the livestock in place, by January 1 of the tax year. The Tait property, therefore, is not entitled to classification as agricultural property for the tax year 1988.

*Id.* at 18, 810 P.2d at 641. The court further stated:

> The departmental guidelines indicate, and the Court has held, that the property must be used with a reasonable expectation of profit solely from its agricultural use. At trial in Tait, the Department agreed that, in determining whether there is a reasonable expectation of profit, the cost of maintaining an investment in the land itself is not to be considered. *See Stewart Title [ & Trust v. Pima County]*, 156 Ariz. [236,] 241, 751 P.2d [552,] 557 [App.1987]. It is also clear that it is not necessary that agricultural activity produce a profit every year. The Court holds, however, that, considered in retrospect, such activity must produce reasonable profit in an average year.

In attempting to assess prospectively whether property first used in the subject year is used with a reasonable expectation of profit from its agricultural use, the Court holds that a two-element test must be applied. First, would a reasonably prudent farmer or rancher use the land as a farm or a ranch if the land were so far removed from an urban environment that it had no potential for development? Second, is the agricultural activity on the land conducted in conformance with generally accepted agricultural practices in use by successful farmers or ranchers? If both of these questions can be answered affirmatively, the property is entitled to an agricultural use classification.

The Court finds, from the evidence presented at trial, that dry land barley farming in Maricopa County, Arizona, is too precarious a venture to entice a reasonably prudent farmer to engage in it. The Court therefore holds ... that the 1988 and 1989 valuations of the Tait property are those values ... which do not recognize an agricultural use of the property.

*Id.*, 168 Ariz. at 19, 810 P.2d at 642. The Taxpayers timely appealed. We have jurisdiction pursuant to A.R.S. § 12–2101(B). The appeal was assigned to Department T of this court pursuant to A.R.S. § 12–120.-04(G).

## ANALYSIS

### Equalization Authority of Board of Tax Appeals

■ The Taxpayers contend that BTA's equalization power under A.R.S. § 42–174 permits it to alter only the valuation, not the classification, of property. We disagree. It is true, as the Taxpayers point out, that the text of A.R.S. § 42–174[5] in effect at the time of the proceedings below referred only to BTA's equalization powers in terms of "increas[ing]" or "decreas[ing]" the "valuation" of any property. We agree with the tax court, however, that this language was not intended to limit BTA to correcting unequal valuations within the same legislative classification.

The Arizona statutes place the initial "equalization" burden on the Department of Revenue. A.R.S. § 42–150(A) confers on the Department the broad power to "equalize," for the purpose of insuring "that all property subject to taxation is listed on the rolls at its full cash value," any valuation "inequities" that "exist between or within counties or *between or within classes or classifications....*" (Emphasis added.) Section 42–150(A) further provides:

The department may equalize valuations of property between or within counties or between any designated areas authorized under the guidelines established by the department and *may also equalize valuations of property between or within the statutory classes established by § 42–162* or the standard use classifications of property established by the department including between or within counties or between any designated area authorized under the guidelines established by the department.

(Emphasis added.)

BTA is statutorily required to hold a hearing on any department equalization order issued pursuant to A.R.S. § 42–150 if requested by a county assessor or affected taxpayer. *See* A.R.S. § 42–173(A). BTA may accept, modify, or reject the order. *See id.* A.R.S. § 42–245 permits any person

---

**5.** At all times material to this appeal, A.R.S. § 42–174 provided:

The state board of tax appeals may at any time require any county board of supervisors or the clerk thereof and the department to furnish statements showing the valuation of the property of any person within any county or within the state. The board shall consider and equalize such valuations and after hearing may *increase or decrease the valuation* of the property of any person, provided that no *increase in any valuation* shall be made with-

out first giving at least five days' notice, by certified or registered letter to the owner of the property to be affected at his address shown on the then existing tax roll, of its intention to do so and of the time and place of the hearing of the board at which *such increase* is proposed to be acted upon. The owner of the property so affected may appear at the hearing and be heard in protest of *any such proposed increase.* (Emphasis added.)

dissatisfied with a valuation or classification decision of a county board of equalization to appeal to BTA within 15 days. A.R.S. § 42-174 complements BTA's appellate authority under A.R.S. §§ 42-173 and 42-245 by empowering it, in essence, to exercise the equalization function on its own motion. Equalization orders of BTA under §§ 42-173, 42-174, and 42-245 are subject to appeal to the tax court pursuant to A.R.S. §§ 42-176 and 42-177. Given the nature of this comprehensive system for equalization and review, under which the Department may equalize both valuations and classifications, we cannot construe A.R.S. § 42-174 to withhold from BTA the authority to classify property when exercising its equalization function.

This analysis is confirmed by our recent decision in *California Cotton Cooperative Ass'n v. Arizona Dept. of Revenue,* 169 Ariz. 261, 818 P.2d 246 (App.1991). There, we considered whether A.R.S. § 42-245(C), which explicitly authorized the Department only to appeal to BTA where a county board of equalization had ordered a "reduction in valuation" of property, authorized the Department to appeal county board classification decisions as well. We found that, viewed against the background of the statutes governing administrative procedures in property tax cases, the meaning of "valuation" encompassed "classification," and accordingly ruled for the Department. *Id.* at 265-66, 818 P.2d at 250-51.

The Taxpayers rely on language from *Arizona Department of Revenue v. Trico Electric Cooperative, Inc.,* 151 Ariz. 544, 729 P.2d 898 (1986), that BTA's power is not "unbridled" and "is limited to changing valuations to reflect full cash value." *Id.* at 549-50, 729 P.2d at 903-04. However, the Taxpayers take these words out of context. *Trico* concerned A.R.S. § 42-124.-01, which prescribed different methods for valuing property of nonprofit cooperative utilities and investor-owned utilities. Trico contended that the statute violated its constitutional right to have BTA adjust its tax assessment. Our supreme court rejected this contention, holding only that BTA could not ignore a statutory definition of "full cash value" and "create its own valua-

tion standards contrary to clearly articulated and unambiguous legislative mandates." *Id.* at 550, 729 P.2d at 904.

Whether BTA could change a property's classification in performing its equalization function was not at issue in *Trico;* nevertheless, *Trico* contains language broadly supporting the view that it can. In its discussion, the *Trico* court stated: "If a valuation formula is being applied inconsistently or erroneously, the Board has the power to correct the valuation." *Id.* at 549, 729 P.2d at 903. An erroneous application of the "income approach" valuation formula mandated for agricultural property by A.R.S. § 42-141(A)(5) is the legal equivalent to an incorrect classification of a property as "used for agricultural purposes." Correcting the "valuation" of such property, which *Trico* makes clear BTA has authority to do, would necessarily entail correcting its classification to nonagricultural.

We also observe that the legislature recently amended A.R.S. § 42-174 to make explicit the interpretation we adopt. As amended by Laws 1991, ch. 203, § 1, A.R.S. § 42-174 now provides:

> The state board of tax appeals may at any time require any county board of supervisors or the clerk thereof and the department to furnish statements showing the valuation *or classification* of the property of any person within any county or within the state. The board shall consider and equalize such valuations *or classifications* and after hearing may increase or decrease the valuation *or change the classification* of the property of any person, provided that no increase in any valuation shall be made without first giving at least five days' notice, by certified or registered letter to the owner of the property to be affected at his address shown on the then existing tax roll, of its intention to do so and of the time and place of the hearing of the board at which such increase is proposed to be acted upon. The owner of the property so affected may appear at the hearing and be heard in protest of any such proposed increase *or change.*

(Emphasis indicates language added by amendment.) *See Hibbs ex rel. Arizona Dep't of Revenue v. Chandler Ginning Co.*, 164 Ariz. 11, 790 P.2d 297 (App.1990) (in view of ambiguity arising from uncertain meaning of "used for agricultural purposes," enactment of A.R.S. § 42–167(K) held not to change statute but to clarify initial intent). In our opinion, the tax court did not err in holding that BTA's equalization authority under A.R.S. § 42–174 encompassed changing classifications as well as adjusting valuations of property within the same classification.

■ We also reject the Taxpayers' contention that the County Board's unappealed decision classifying the property as agricultural for 1988 operated as *res judicata*, barring BTA from redetermining the property's classification pursuant to A.R.S. § 42–174. In *Hibbs v. Calcot, Ltd.*, 166 Ariz. 210, 801 P.2d 445 (App.1990), we adopted and applied *Restatement (Second) of Judgments* § 83(4), which provides: ·

> An adjudicative determination of an issue by an administrative tribunal does not preclude relitigation of that issue in another tribunal if according preclusive effect to determination of the issue would be incompatible with a legislative policy that:
>
> (a) The determination of the tribunal adjudicating the issue is not to be accorded conclusive effect in subsequent ·proceedings; or
>
> (b) The tribunal in which the issue subsequently arises be free to make an independent determination of the issue in question.

A.R.S. § 42–245 confers appellate jurisdiction on BTA over valuation and classification decisions of county boards of equalization. If A.R.S. § 42–245 embodied the exclusive statutory procedure by which a classification decision of a county board could reach BTA, the view that BTA lacks authority to review such a decision unless that procedure is invoked would be well taken.

As we have observed, however, A.R.S. § 42–174 confers unconditional, independent authority on BTA to consider and equalize property valuations and classifications on its own motion. In our opinion, A.R.S. § 42–174 clearly expresses a legislative policy that valuation and classification decisions of the county boards, as well as equalization orders of the Department, are not to be accorded conclusive effect as against BTA, which is to remain free to make equalization decisions independently. Thus, the Department's failure to timely challenge the County Board's determination that the Tait property was "used for agricultural purposes" did not bar BTA's independent consideration and resolution of that issue.

*"Used for Agricultural Purposes"*

We next consider whether the tax court erred in holding that the Tait property did not qualify as property "used for agricultural purposes" in 1988 and 1989. We are bound by the tax court's findings of fact unless they are clearly erroneous, but we may redetermine *de novo* the tax court's legal conclusions from those facts. Rule 52, Arizona Rules of Civil Procedure; *Wean Water, Inc. v. Sta–Rite Industries, Inc.*, 141 Ariz. 315, 686 P.2d 1285 (App. 1984); *Guirey, Srnka & Arnold, Architects v. City of Phoenix*, 9 Ariz.App. 70, 449 P.2d 306 (1969). *See In re Estate of Moore*, 137 Ariz. 176, 669 P.2d 609 (App. · 1983).

A. *Requirement of Planting by January 1*

■ As we observed above, the tax court held that property on which agricultural activity has long been absent is not entitled to be valued as "used for agricultural purposes" in a given tax year unless crops were planted or livestock was in place by January 1 of that year. The Taxpayers contend that the objectively ascertainable indicia of a parcel's "intended use" that are apparent on January 1, like Tait's efforts to clear his property for planting and register it as a farm, should control. We agree with the Taxpayers that the tax court erred in concluding as a matter of law that the property did not qualify as "used for agricultural purposes" for the 1988 tax year on

the basis that there was not a barley crop in the ground on January 1, 1988.

The tax court relied on A.R.S. § 42–221(B), which in 1988 provided, in relevant part:

Not later than November 30 each year the county assessor shall ascertain by diligent inquiry and examination all property in his county subject to taxation.... He shall ... determine through the use of the manuals furnished and procedures prescribed by the department the full cash value of all such property, *as of January 1 of the next year,* and he shall list such property together with the valuation found for use on the roll.

(Emphasis added.) From this statute, the tax court concluded:

The Court holds that this statute provides that the condition of the property on January 1 decides both its classification and valuation for the tax year beginning on that date. *See Stewart Title & Trust v. Pima County,* 156 Ariz. 236, 751 P.2d 552 (App.1988). On January 1, 1988, the Tait property was not being used for agricultural purposes. Up to that time, no field crop had been grown on the property for at least as many years as the Tait interests had owned the property.

\* \* \* \* \* \*

Because of the great potential for abuse, tests for determining whether property qualifies as used for agricultural purposes must be objective to the extent possible. The subjective intent to plant later or herd later is not enough, even if such intent is coupled with steps taken to make the property ready for the later intended agricultural use. It should be noted that in ... the Tait case ..., the issue is the classification of property first used for agricultural purposes after a long absence of such activity. In such a case, the Court holds, that *in order to justify a classification of land used for agricultural purposes, the crops must have been planted ... by January 1 of the tax year.* The Tait property, therefore, is not entitled to classification as agricultural property for the tax year 1988.

168 Ariz. at 17, 18, 810 P.2d at 640, 641 (emphasis added). The Taxpayers had argued at trial that, because clearing on the land had commenced in anticipation of a 1988 planting, the property should have been classified as "intended" for agricultural use. The Taxpayers relied on A.R.S. § 42–162(B), which provided in part:

For the purposes of classification of property under this section, partially completed or vacant improvements shall be classified according to their intended use.

The tax court rejected this argument on two bases:

First of all, the statute reads "for the purpose of classification of property *under this section.*" "This section" is A.R.S. § 42–162. A.R.S. § 42–162 divides property into eight classes for taxation. A.R.S. § 42–162(B) is directed only at the process of categorizing property into one of the eight classes defined in A.R.S. § 42–162(A). The Tait property will be classified in class 4 whether it is classified as agricultural property or as vacant land. [Second,] A.R.S. § 42–162(B) also refers to partially completed or vacant improvements, which the Court holds to be something other than clearing and leveling vacant land.

This is not to say that A.R.S. § 42–162(B) precludes classifying agricultural land for its intended use. It simply does not address the issue. Whether land being cleared for planting should be classified as agricultural depends upon whether or not the legislature so intended in the enactment of the relevant statutes. The Court holds that it did not.

168 Ariz. at 18, 810 P.2d at 641.

We disagree with the tax court on both bases. First, A.R.S. § 42–162(B) evidences a clear legislative intent to classify, within the eight stated classes of § 42–162(A), "partially completed or vacant improvements" according to their "intended use." Property primarily used for agricultural purposes is included within those properties defined in class 4 of that "section" to

which this provision applies. Thus, the provisions of subsection (B) properly apply to the Taxpayers' property.

Second, we disagree with the tax court that Tait's activities in clearing and leveling the land to prepare it for a 1988 planting cannot be considered a "partially completed or vacant improvement" within the clear meaning of subsection (B). In other statutory contexts, we have defined "improvement" to mean "a valuable addition or betterment to real estate," including "[c]learing, grading and excavation of land." *Lewis v. Midway Lumber, Inc.*, 114 Ariz. 426, 430, 561 P.2d 750, 754 (App.1977) (interpreting former A.R.S. § 33–993(A)); *see also Interstate Lumber Co. v. Rider*, 93 Mont. 489, 19 P.2d 644 (1933). Thus, we hold that the "intended use" criteria of A.R.S. § 42–162(B) applies to the property in this case in determining if it was "primarily used for agricultural purposes" on January 1, 1988.[6]

▮ From this, it necessarily follows that the property was not precluded from an agricultural use classification on the basis that the crops were not planted by January 1 of the tax year, if the Taxpayers established that the intended use of the property, as indicated by its partially completed or vacant improvements on that date, was agricultural. We agree with the tax court that the test is an objective rather than subjective one:

> Because of the great potential for abuse, tests for determining whether property qualifies as used for agricultural purposes must be objective to the extent possible. The subjective intent to plant later ... is not enough, even if such intent is coupled with steps taken to make the property ready for the later intended agricultural use.

168 Ariz. at 18, 810 P.2d at 641. *See also Hayden Partners Ltd. Partnership v. Maricopa County*, 166 Ariz. 121, 124, 800 P.2d 987, 990 (App.1990) ("evident legisla-tive purpose" of A.R.S. § 42–162(B) "was to ensure classification of partially improved property according to its objectively ascertainable end use").

In this case, the objective indicia of Tait's intent to use the land for agricultural purposes in the 1988 tax year were clearly established by the tax court's findings that Tait began the necessary clearing of the land for the purpose of planting a field crop in 1986, but that the unanticipated difficulties in using his own equipment prevented an actual planting until early 1988. Furthermore, the undisputed evidence before the tax court was that Tait continued the clearing activity in early 1987 by having the remaining trees on the property cut for firewood, and sought bids from contractors to finish the clearing process. In late 1987, Tait commenced the process of registering the property as a farm, and, on December 12, 1987, hired a contractor to clear the land of remaining tree stumps, level the washes, and remove a berm built by motorcycle riders. Major clearing activity began on December 18, 1987; by the beginning of January 1988, there was evidence that a disinterested observer would have concluded the land was in the process of being cleared. Tait eventually incurred more than $32,000 in expenses from this clearing process.

The conclusion that the property was objectively intended for agricultural use on January 1, 1988, is further supported by the deposition testimony of Robert F. Koehler, a former supervisor of the Department of Revenue, who developed and drafted the Department's Agricultural Manual No. 1532 that contained the guidelines to determine agricultural use of property for tax classification in 1988. Koehler testified that, if an appraiser inspected property in December to assess it for the following tax year and observed that previously vacant land had been leveled and disked, with ditches cleared and repaired, it "would be incumbent upon the appraiser to

---

6. We note that the current version of § 42–162(B), as amended by Laws 1991, ch. 303, § 3, no longer includes property that is classified as agricultural pursuant to § 42–167. Because the issue is not raised in this appeal and was not before the tax court, we do not address the retroactive application of that amendment to tax years after December 31, 1985. *See* Laws 1991, ch. 303, § 8.

check with the owners and find out whether this is a valid intent to transition back to that agricultural use and whether it does in fact meet the [criteria] outlined in the guidelines for an operated farm." If the guidelines were otherwise met, "the appraiser would be justified in reclassifying the property" to agricultural use, even if no crops were planted at that point.

Under these circumstances, and in the absence of any evidence of a sham operation, the undisputed evidence, as well as the tax court's own findings, support only the legal conclusion that on January 1, 1988, the Tait property was both partially improved and intended primarily for use for agricultural purposes within the meaning of A.R.S. § 42–162(B). We thus turn to whether the tax court's ruling that no "agricultural use" was shown is correct.

### B. *Reasonable Expectation of Profit*

■ The Taxpayers argue that the requirement of the Department's Agricultural Manual No. 1532 that "agricultural" property be "used with a reasonable expectation of profit solely from its agricultural use" is intended only to assist in determining whether a putative agricultural use is bona fide and not merely a sham. They contend there is no independent "reasonable expectation of profit" requirement for agricultural classification.

We agree with the Taxpayers that the fourth criterion of the Department of Revenue Agricultural Manual No. 1532—that the property be "used with a reasonable expectation of profit solely from its agricultural use"—is not an independent legal requirement for qualification as agricultural property.[7] *Cf. Stewart Title & Trust v. Pima County*, 156 Ariz. 236, 241, 751 P.2d 552, 557 (App.1987). However, unlike the Taxpayers, we do not read the tax court's opinion to hold otherwise.

In interpreting the "reasonable expectation of profit" guideline, the tax court developed and applied a two-part test:

7. The four criteria for agricultural property set forth in the Manual merely fill in the details of the legislation, and have been upheld repeated-

(1) Would a reasonably prudent farmer or rancher use the land as a farm or ranch if the land were so far removed from an urban environment that it had no potential for development?
(2) Is the agricultural activity on the land conducted in conformance with generally accepted agricultural practices in use by successful farmers or ranchers?

168 Ariz. at 19, 810 P.2d at 642. The Taxpayers assail this test as "factually and legally baseless," and challenge the tax court's finding that dry land barley farming in Maricopa County is "too precarious a venture to entice a reasonably prudent farmer to engage in it." The Taxpayers also argue that the legislature did not intend to deny favorable tax treatment to legitimate but innovative agricultural activities like Tait's.

■ In our opinion, the first prong of the tax court's two-part test impermissibly reintroduces the negative specter of the urban development potential of property into the assessment scheme, and brings into question the subjective intent to hold land for investment regardless of its actual valid agricultural use, an effect that is contrary to legislative intent. *See Stewart Title*, 156 Ariz. at 242–43, 751 P.2d at 558–59. The tax court may have intended exactly the opposite effect by application of this prong by "removing" the land from the influences of urban development, but the effect is to disregard the question of what constitutes a reasonable expectation of profit from this particular property, with its unique characteristics, which include its location in an area adjacent to an urban area. This observation aside, we agree with the tax court's statement that:

[T]he legislature intended that property dedicated to a *bona fide* agricultural use was not to be subject to crippling taxes caused by rapid valuation increases engendered by speculation on future urban development. The Court is also convinced that the legislature did not intend to permit an agricultural use classifica-

ly. *Central Citrus Co. v. Arizona Dep't of Revenue,* 157 Ariz. 562, 760 P.2d 562 (App.1988).

tion to speculators or developers who, seeking significant tax relief, use idle vacant land for something less than a *bona fide* agricultural activity. 168 Ariz. at 19, 810 P.2d at 642.

■ Similarly, the tax court's second prong of its two-part test, while attempting to formulate an objective criterion, ignores the potential bona fide use and reasonable expectation of profit in the context of this particular property by these particular taxpayers. Indeed, we agree with the Taxpayers that the tax court's application of these standards to this case resulted in a legal conclusion that was inconsistent with its own findings that Tait was a "competent agronomist" who fully researched the profitability of dry farming a type of barley developed for dry climates on property with an additional water supply from rain runoff, and that in 1989 only "an unusual lack of rainfall in March, coupled with unusually high temperatures, devastated what otherwise would have been a remarkably successful project." 168 Ariz. at 15, 810 P.2d at 638. The court also recognized that, even in the face of an unusually dry growing season, if Tait had employed an earlier harvesting method by green-chopping the barley, "the crop would have proven profitable." *Id.* These findings are inconsistent with a legal conclusion that the Taxpayers did not have a "reasonable ex-

pectation of profit" from the agricultural use of this property in 1988 and 1989. Additionally, the trial court appeared to favor the "green-chopping" method of harvesting, which Tait did not utilize in the years in question. However, whether Tait green-chopped or not is irrelevant to his use of the land as a farm. Furthermore, the tax court's finding that dry land barley farming may be generally "precarious" in Maricopa County does not establish that it cannot reasonably be expected to be profitable on this property with its unique characteristics, when done by a competent, experienced farmer who has researched the requirements of an innovative crop. Finally, we note the complete lack of any evidence that Tait's farming activities in 1988 and 1989 were a "sham" operation intended to gain a tax advantage on the property.

In rejecting the tax court's two-part test, we do not develop another.[8] The guideline at issue in this case merely required a "reasonable expectation of profit" from the agricultural use of the land in order for the property to be classified as "used for agricultural purposes" pursuant to A.R.S. § 42–141(A)(5). In this case, the Taxpayers have established that they met this criterion for the tax years in question. Thus, in our opinion, the tax court erroneously held that the Tait property did not qualify as

---

**8.** We note that the 1991 Arizona Department of Revenue Agricultural Manual now defines "reasonable expectation of operating profit" within the meaning of current A.R.S. § 42–167(A)(2) as follows:

Whether a prudent rancher or farmer is managing or operating the property as a ranching or farming business similar to other experienced and successful ranchers and farmers and would reasonably expect to make a profit in a reasonable period of time, after deducting all reasonable and necessary operating expenses, excluding the cost of land.

The factors to be considered include:

1. The manner in which the taxpayer carries on the agricultural activity.
2. The expertise of the taxpayer or his advisors.
3. The time and effort expended by the taxpayer in carrying on the agricultural activity.
4. The success of the taxpayer in carrying on other similar or dissimilar agricultural activities. ("The fact that the taxpayer has engaged in similar activities in the past and converted

them from unprofitable to profitable enterprises may indicate that he is engaged in the present activity with reasonable expectation of profit, even though the activity is presently unprofitable.")

5. The taxpayer's history of income or losses with respect to the agricultural activity. ("A series of losses during the initial or start-up state of an activity may not necessarily indicate the activity is not engaged in with reasonable expectation of profit.... If losses are sustained because of unforeseen or fortuitous circumstances which are beyond the control of the taxpayer, such as drought ..., such losses would not indicate the activity is not engaged in with reasonable expectation of profit.")

6. The amount of occasional operating profits, if any, which are earned.

Although we do not apply these factors retroactively to the case before us, we note that the Taxpayers here would have met these standards in establishing a reasonable expectation of operating profit.

"used for agricultural purposes" for tax years 1988 and 1989.

## CONCLUSION

The judgment of the tax court in favor of appellees regarding the Tait property is reversed, and that portion of the opinion is vacated.[9] This matter is remanded for entry of a judgment classifying the property as class 4 agricultural use property pursuant to A.R.S. § 42–141(A)(5) for tax years 1988 and 1989, determining that full cash value stipulated by the parties in the joint pretrial statement, and adjusting the tax assessment accordingly.

The Taxpayers have requested attorneys' fees pursuant to A.R.S. § 12–348. That request is granted, upon compliance with Rule 21(c), Arizona Rules of Civil Appellate Procedure.

KLEINSCHMIDT, P.J., and GERBER, J., concur.

---

9. Those portions of the tax court opinion dealing with *Marley v. Arizona Department of Revenue,* Cause No. TX 89–00963, have not been appealed to this court, and are not before us.

Thus, we vacate only those portions of the opinion relating to the Tait property, Cause Nos. TX 88–00289 and TX 89–00082.